**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ZAYO GROUP, LLC,

              Plaintiff,

    v.

OCEAN PACIFIC INTERIORS, INC.,

              Defendant.

Case No. 16-cv-7808

**PLAINTIFF'S AMENDED COMPLAINT FOR FRAUDULENT
INDUCEMENT AND BREACH OF CONTRACT**

Plaintiff, ZAYO GROUP, LLC ("Zayo"), by and through its attorneys, Adam C. Toosley and David J. Doyle of Freeborn & Peters LLP, and for its Amended Complaint against OCEAN PACIFIC INTERIORS, INC., state as follows:

**PARTIES**

1.     Zayo is a Delaware limited liability company with its principal place of business in Colorado.

2.     Zayo Group Holdings, Inc. is a Delaware corporation based in Colorado, and is the sole member of Zayo.

3.     Ocean Pacific Interiors, Inc. ("OPI") is a New York corporation with its principal place of business located in New York.

**SUBJECT MATTER JURISDICTION AND VENUE**

4.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) based upon complete diversity of the parties and a minimum amount in controversy in excess of $75,000.00, exclusive of interest and costs.

5.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(1) because the construction project at issue in this case was located in the State of Illinois and under the Illinois

Building and Construction Contract Act, any venue provision in the documents at issue that requires suits to be filed outside of Illinois is not enforceable.

## BACKGROUND FACTS

### General Allegations

6.      Pursuant to a written lease, Zayo is the tenant on the property located at 800 East Business Dr., Mount Prospect, IL 60056 (the "Property").

7.      In 2013, Zayo decided to build a colocation center on the Property, and the colocation center construction was to be performed in phases (the "Project").

8.      On July 10, 2014, Zayo and OPI entered into a Master Services Agreement ("MSA") pertaining to work to be performed for Zayo and by OPI on various projects, including the various phases of the Project.  A true and correct copy of the MSA is attached hereto as Exhibit "1."

### Phase Two of the Project

9.      On or about February 13, 2014, Zayo and OPI entered into "Exhibit A" to the CMSA for Phase Two of the Project, which outlined OPI's scope of work for that phase, and was for the total sum of $8,173,054.00 to be paid by Zayo to OPI.  A true and correct copy of this Exhibit A document is attached hereto as Exhibit "2."

10.      As for Phase Two, in addition to the contract sum of $8,173,054.00, there were three additional purchase orders for expanded scope of work entered into on the Project, in the amounts of $15,500.00, $421,946.00 and $550,000.00.   True and correct copies of these purchase orders are attached hereto as Group Exhibit "3."

11.      Over the course of Phase Two of the Project, Zayo paid OPI the full contract sum of $8,173,054.00, and the last payment was made on July 16, 2014.  All of the payments were made in exchange for a release of mechanic's lien provided by OPI.

12.     The payments for the three purchase orders for Phase Two of the Project were made in the summer of 2014, and were also made in exchange for partial lien releases from OPI.

13.     After Zayo received an invoice for OPI's services on the Project, and after OPI received payment from Zayo of that invoice, OPI provided Zayo with a partial lien for each payment made.

14.     The total amount of partial lien releases Zayo received from OPI equaled the amount Zayo owed under the parties' agreements on the Project.

15.     Zayo satisfied its contractual obligations and received a full and complete release of lien, which was achieved over a total of six (6) partial lien waivers received from OPI.

16.     For example, on or about July 16, 2014, OPI provided a Release of Lien, identifying that it was owed $0.00 for its work on Phase Two of the Project after payment of $388,989.81.  The July 16, 2014 Release of Lien provided:

> In consideration of receiving a payment from Zayo Group LLC in the amount of $388,989.81, Ocean Pacific Interiors Inc., and its corporate parents, affiliates, subsidiaries, employees, agents, subcontractors, materialmen, successors and assigns (collectively, the "Claimant") hereby agrees and acknowledges it has received partial payment for all work, services, materials and equipment provided to the construction project located at 800 Business Drive, Mt Prospect, IL 60056 (the "Project") due and owing as of this date.  To that end, Claimant, as of this date, releases and discharges any claims, rights and/or judgments it has, or may have against, Zayo Group LLC, the owner of the real property located at 800 Business Drive, Mt Prospect, IL 60056 (the "Owner") relative to the Project.  **The Claimant represents and warrants that it has paid in full and has otherwise fully satisfied all of its obligations for all work, services, materials and equipment furnished and labor supplied by or on behalf of the Claimant on the Project.**
>
> Claimant sells, assigns and transfers to Zayo Group LLC, its successors or assigns, all of the Claimant's rights, title and interest to any claim, right, judgment or recovery relative to the Property and/or the Project that it has had, or may have as of this date, including Claimant's right to file and discharge mechanic liens.  Claimant hereby appoints Zayo Group LLC as its attorney-in-fact for the purposes of discharging any lien Claimant may have filed on the Property.  Claimant also agrees to execute such further documents as may be reasonably necessary to effectuate the assignment and transfer the aforementioned

claims to Zayo Group LLC. Claimant represents and warrants it has not filed a mechanic's lien on the Property as of this date, and in the future shall not file a mechanic's lien on the Project for the claims released and discharged herein. **Claimant further represents that, as of this date, all suppliers of labor, equipment, materials, superintendence, or any other service or commodity, whether under direct contractual obligations to the Claimant or not, who have contributed directly or indirectly to the Claimant's fulfillment of its contractual obligations relating to the Project, have been paid in full (or shall be paid in full within seven (7) days) and there are no outstanding claims, demands, fines, or unsettled disputes between the Claimant and any of its subcontractors, materialmen, or suppliers.** In the event that the Claimant hereafter becomes aware of any such claim, demand, or dispute, the Claimant agrees to notify Zayo Group LLC writing within three (3) calendar days **and to immediately discharge or satisfy any such claim, demand, or dispute at the Claimant's sole expense**. Claimant(s) further agrees, upon Zayo Group LLC's request, to immediately provide Zayo Group LLC or its designee with such further releases, and releases of liens, and any other requisite instruments from itself and its subcontractors and suppliers as Deutsche Bank may require within three (3) days of Zayo Group LLC's written request.

**Claimant agrees to indemnify, protect, defend and hold Zayo Group LLC harmless from and against all losses, damages, expenses or liabilities of every kind whatsoever which arise from or are related to a breach of any term of this agreement, including without limitation, all losses arising from or in connection with all suits, proceedings, claims and/or demands from third parties** and/or all damages, costs, fines and/or penalties of any kind whatsoever by any governmental entity, and any all claims, demands or losses of every kind whatsoever by Zayo Group LLC's surety on this project (if any), which are suffered, incurred, sustained or required to be paid by Zayo Group LLC, including without limitation all legal costs including attorneys' fees and court costs incurred in investigating and defending any of the above. In connection with this defense and indemnity obligation of the Claimant, **Zayo Group LLC, shall have the right, in its sole and absolute discretion and upon notice to the Claimant, to employ separate counsel in any such suit or proceeding and/or to participate in the defense thereof at the Claimant's expense**. Further, to the extent any statement, covenant or representation made by Claimant herein is breached and/or is false, Zayo Group LLC will be entitled to recover all damages resulting therefrom including, but not limited to, all attorneys' fees incurred by Zayo Group LLC. Any and all litigation arising between the Claimant and Zayo Group LLC as a result of, but not limited to, liability, damages, costs, fines, and/or penalties incurred by Zayo Group LLC shall be litigated in New York and subject to New York state law. The undersigned represents and warrants that he or she is duly authorized to execute this document and bind the Claimant to the promises made herein.

A true and correct copy of the July 16, 2014 Release of Lien is attached hereto as Exhibit "4."

17.     Despite the representations in the July 16, 2014 Release of Lien, as of the time of the final payment for Phase Two from Zayo to OPI, many subcontractors and suppliers of OPI had not been paid by OPI.

18.     To that end, numerous subcontractors and suppliers sent notice and/or recorded mechanic's liens on the Property:   (a) on October 1, 2014, Sunrise Electrical recorded a mechanic's lien For $304,089.64; (b) on October 9, 2014, Advance Electrical recorded a mechanic's lien for $69,078.28; (c) on September 3, 2014, Columbia Pipe & Supply recorded a mechanic's lien for $92,783.89; (d) on November 4, 2014, NY Electric recorded a mechanic's lien for $766,600.47; (e) on December 2, 2014, Talaga Sheet Metal recorded a mechanic's lien for $201,978.00; (f) on December 22, 2014, Parkside Insulation recorded a mechanic's lien for $47,323.00; (g) on January 29, 2015, Chicago Switchboard recorded a mechanic's lien for $21,974.76; (h) on February 6, 2015, Porter Pipe recorded a mechanic's lien for $21,620.47; and (i) on October 16, 2014, Burris Equipment Co. recorded a mechanic's lien for $8,261.00.

19.     On Phase Two of the Project, OPI was also responsible for the installation of two Arctic Cool chillers on the roof of the Property.

20.     The chillers were purchased by Zayo at a cost of $783,000.00.

21.     Starting in November of 2014, Zayo noticed issues with the chillers installed by OPI and they eventually became inoperable.

22.     The chillers experienced problems and became inoperable as a result of OPI, or one of its subcontractors, failing or neglecting to put glycol in the water in the free cooling coils.

23.     In order to correct OPI's work on the chillers, Zayo was forced to expend the sum of $623,973.00.

24.     Furthermore, OPI has failed to provide certain documentation for Zayo to close out its permit of Phase 2 and receive a certificate of occupancy from the Village of Mt. Propsect related to the Project.

### Phase 2-A of the Project

25.     On or about January 19, 2015, Zayo and OPI entered into an Amended Project Services Agreement which was to cover additional work to be performed by OPI on the Project (the "Phase 2-A Agreement").  A true and correct copy of the Phase 2-A Agreement is attached hereto as Exhibit "5."

26.     In accordance with the Phase 2-A Agreement, OPI agreed to perform certain punch list and other tasks for the Project.  (Exhibit 5).

27.     In accordance with the Phase 2-A Agreement, Zayo agreed to pay to OPI the sum of $795,689.00.  (Exhibit 5).

28.     As for the Arctic Cool chillers referenced above, the Phase 2-A Agreement provided that OPI was to:

(a)     Submit a claim to its insurer, without waiving or releasing any insurer subrogation rights, for damage to the chiller system that currently exists;

(b)     Provide and fund a mutually acceptable vendor to repair and/or control and oversee the repair of the chiller system to its intended operating condition, which repair(s) and subsequent third party warranty shall be subject to Zayo's prior reasonable approval, which shall not be unreasonably withheld;

(c)     Fund the repair of the chiller system in the event that Contractor's insurer denies any or all of the insurance claim;

(d)     Upon completion of chiller system repairs, re-commission the mechanical systems to ensure proper operation / functionality as evidenced by the establishment of a third party warranty; and

(e)     Provide and/or fund temporary chiller unit(s) as necessary during any and all repairs to the primary/permanent chiller system(s).

(Exhibit 5).

29.     Claims regarding the chiller system were denied by insurers for both Zayo and OPI, but, to date, OPI has failed and refused to reimburse Zayo for the costs associated with the chillers.

30.     In accordance with the Phase 2-A Agreement, OPI agreed to complete the Project by May 1, 2015.  (Exhibit 5).

31.     The Phase 2-A Agreement was amended by the parties, and the new agreed-upon completion date for the Project was August 17, 2015.  A true and correct copy of the Amended First Amendment to Project Service Agreement #2A is attached hereto as Exhibit "6."

32.     Despite the agreement to finish this Project by August 17, 2015 in accordance with the Phase 2-A Agreement (and its amendments), OPI did not finish its work until May of 2016.

33.     In accordance with the Phase 2-A Agreement, Zayo is entitled to liquidated damages from OPI of one percent (1%) per day, up to one thousand dollars ($1,000) per day, for each calendar day of delay after August 17, 2015.  (Exhibits 5 and 6).

## COUNT I
## Fraudulent Inducement

34.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 34.

35.     To induce Zayo to make payments to OPI on the Project, OPI provided certain lien waivers to Zayo.

36.     On those lien waivers, OPI made representations, including that "all suppliers of labor, equipment, materials, superintendence, or any other service or commodity, whether under direct contractual obligations to the Claimant or not, who have contributed directly or indirectly to the Claimant's fulfillment of its contractual obligations relating to the Project, have been paid

in full (or shall be paid in full within seven (7) days) and there are no outstanding claims, demands, fines, or unsettled disputes between the Claimant and any of its subcontractors, materialmen, or suppliers."

37. Despite the representations in the lien waivers, OPI did, in fact, know of "suppliers of labor, equipment, materials, superintendence, or any other service or commodity" who were owed money on the Project and/or that there were outstanding "claims, demands, fines, or unsettled disputes" between OPI and "its subcontractors, materialmen, or suppliers" on the Project.

38. Additionally, for each payment made by Zayo to OPI, OPI provided documents called "Requests for Payment."

39. In the requests for payment, OPI swore under oath that it had paid all amounts previously paid by OPI to its suppliers and subcontractors.

40. In the Sixth Request for Payment for the Project, OPI swore under oath that the total remaining amount due and owing for OPI's work on the Project was $0.00 and that, as of the date of the requests for payment, OPI was 100% complete with Phase Two of the Project.

41. Despite the representations made in the requests for payment, and more specifically, the Sixth Request for Payment, OPI did not pay all sums due to its suppliers and subcontractors and OPI was not 100% complete with Phase Two of the Project as seen by the significant amount of mechanic's liens placed on the property by OPI's suppliers and subcontractors after that date.

42. The representations made by OPI in the lien waivers and requests for payment were made in order to induce Zayo to make payments to OPI.

43.     The representations made by OPI in the lien waivers and requests for payment were false.

44.     Zayo reasonably relied upon the misrepresentations made by OPI in the lien waivers and requests for payment.

45.     Zayo relied, to its detriment, on the misrepresentations made by OPI in the lien waivers and requests for payment, and has been damaged by those fraudulent representations.

WHEREFORE, Zayo Group, LLC, requests that this Court enter judgment against Ocean Pacific Interiors, Inc. on Count I in an amount to be proven at trial, and such other costs, fees and expenses as provided for under the agreements between the parties, and for such other relief as this Court determines to be just and proper.

## COUNT II
## Breach of Contract-Failure to Defend/Indemnify

46.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 46.

47.     Despite the representations in the lien waivers to the contrary, to date, OPI failed to defend and indemnify Zayo from the claims made by some of its suppliers and subcontractors on the Project.

48.     Zayo has fully performed under its contractual obligations with OPI.

49.     Due to the breach of the agreement in the lien waivers, Zayo has been damaged in that it incurred attorneys' fees and costs defending against the lien claims of OPI's suppliers and subcontractors.

50.     Although Zayo's claims against OPI related to three of OPI's subcontractors or suppliers have been settled (Talaga Sheet Metal, Columbia Pipe, Parkside Insulation), Zayo still

incurred fees and costs unnecessarily defending against the claims of the other claimants on the Project.

WHEREFORE, Zayo Group, LLC, requests that this Court enter judgment against Ocean Pacific Interiors, Inc. on Count II in an amount to be proven at trial, plus such other costs, fees and expenses as provided for under the agreements between the parties, and for such other relief as this Court determines to be just and proper.

## COUNT III
### Breach of Contract-Chiller Repairs

51. Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 51.

52. As identified above, as part of the Phase 2-A Agreement, OPI agreed to fund the repair of the Arctic Cool chiller system if OPI's insurer denied the claim regarding the chillers.

53. OPI's insurer denied the claim regarding the chillers.

54. Zayo's insurer also denied the claim regarding the chillers.

55. Despite the promise to do so, OPI has refused and failed to reimburse Zayo for out of pocket costs spent to repair the Arctic Cool chiller system.

56. Zayo has fully performed under the Phase 2-A Agreement.

57. The failure to reimburse Zayo for its out of pocket costs spent to repair the Arctic Cool chiller system is a breach of the Phase 2-A Agreement by OPI.

58. Zayo has been damaged by OPI's failure to reimburse Zayo.

59. On February 23, 2016, Zayo demanded that OPI reimburse it for out of pocket costs spent to repair the Arctic Cool chiller system, but to date, OPI has not responded to the demand or reimbursed Zayo for its out of pocket costs. A true and accurate copy of the February 23, 2016 demand is attached hereto as Exhibit "7."

WHEREFORE, Zayo Group, LLC, requests that this Court enter judgment against Ocean Pacific Interiors, Inc. on Count III in an amount to be proven at trial, plus costs of enforcement and such other costs, fees and expenses as provided for under the agreements between the parties, and for such other relief as this Court determines to be just and proper.

## COUNT IV
## Breach of Contract-Daily Damages for Failing to Complete Project

60.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 60.

61.     In accordance with the Phase 2-A Agreement (and its amendment), OPI agreed to finalize Phase 2-A of the Project by August 17, 2015. (Exhibits 5 and 6).

62.     Despite the agreement to finish Phase 2-A of the Project by August 17, 2015 in accordance with the Phase 2-A Agreement (and its amendments), OPI did not finish its work until April of 2016 at the earliest.

63.     In accordance with the Phase 2-A Agreement, Zayo is entitled to liquidated damages from OPI of one percent (1%) per day, up to one thousand dollars ($1,000) per day, for each calendar day of delay after August 17, 2015. (Exhibits 5 and 6).

64.     Zayo has fully performed under the Phase 2-A Agreement.

65.     The failure of OPI to finish Phase 2-A of the Project is a breach of the Phase 2-A Agreement by OPI.

66.     Zayo has been damaged by OPI's breaches of the Phase 2-A Agreement.

67.     On February 19, 2016, Zayo demanded that OPI pay the liquidated damages due to OPI's failure to complete Phase 2-A of the Project in a timely manner, but to date, OPI has not responded to the demand or paid Zayo the liquidated damage amount. A true and accurate copy of the February 19, 2016 demand is attached hereto as Exhibit "8."

WHEREFORE, Zayo Group, LLC, requests that this Court enter judgment against Ocean Pacific Interiors, Inc. on Count IV in an amount to be proven at trial, plus costs of enforcement and such other costs, fees and expenses as provided for under the agreements between the parties, and for such other relief as this Court determines to be just and proper.

## COUNT V
### Breach of Contract-Other Damages on the Project

68.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 68.

69.     The MSA provided, in part, in Section 6 that:

**Warranty of Services**: [OPI] warrants that the Services performed under this Agreement conform to the Agreement requirements and are free from defects in design or workmanship performed by the [OPI] or any of its subcontractors (the "Services Warranty"). This Services Warranty shall remain in effect for twelve (12) months from the date Services are completed.

[OPI] shall remedy at its expense any such defect or failure to conform and is responsible for any damages to persons and property resulting from such defects or failure to conform. The Contractor shall also restore any Services damaged in fulfilling the terms of this Services Warranty.

(Exhibit 1).

70.     On June 19, 2014, during construction on the Project, OPI failed to wait the statutorily required period of time after calling the Illinois State One-Call System, before commencing their work  to request a locate extension and to have all utility companies mark their lines on the property.

71.     When OPI called the Illinois State One-Call System, OPI was required to cease all digging activities on the property to allow all utility companies to mark their lines.

72.     OPI violated the Illinois State One-Call System when it continued to excavate on June 21, 2014 and hit and damaged Commonwealth Edison's service line in the tolerance

zone/easement with power equipment, ultimately knocking out power to the facility where the Project was located.

73.     OPI's actions have damaged Zayo in that Commonwealth Edison has billed Zayo for the aforementioned damage to its service line.

74.     OPI's failure to reimburse Zayo for the amount billed by Commonwealth Edison is a breach of the MSA, and more specifically, the warranty provision in Section 6.

WHEREFORE, Zayo Group, LLC, requests that this Court enter judgment against Ocean Pacific Interiors, Inc. on Count V in an amount to be proven at trial, plus costs of enforcement and such other costs, fees and expenses as provided for under the agreements between the parties, and for such other relief as this Court determines to be just and proper.

Respectfully submitted,

ZAYO GROUP, LLC,

By:  /s/ Adam C. Toosley
        One of its Attorneys

David J. Doyle
Adam C. Toosley
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606-6677
312.360.6000

DocuSign Envelope ID: 35A86DAF-3C21-4A79-BE7B-FD1D28715B78



*Master Services Agreement*

This Master Services *Agreement* (the "*Agreement*") is made and entered into on July 10, 2014 (the "Effective Date") by and between Zayo Colocation, LLC ("Zayo"), a Delaware limited liability company, together with its affiliates whose address is 1805 29th St, Boulder, CO 80301, and _Ocean Pacific Interiors, Inc.  ("Contractor"), a company incorporated in the state of New York, y with offices at _7 Hanover Square, 8th Floor, New York, NY 10004.  All terms shall have the meaning ascribed to it in this Agreement or any Statement of Work.

Whereas, Zayo and Contractor desire to enter into this Agreement whereby Contractor will provide certain data center construction services for Zayo, and both parties have agreed to certain terms and conditions as more specifically set forth herein;

Now, therefore, in consideration of their mutual promises and other good and valuable consideration, Zayo and Contractor agree as follows:

1. **Term and Termination:** The term of this Agreement shall be three (3) years from the Effective Date. Notwithstanding the foregoing, Zayo may terminate this Agreement (including any and all PSAs) without any further liability by giving at least thirty (30) day's written notice to Contractor.

2. **Statement of Work:** Contractor agrees to provide Zayo with inside plant construction services (the "Services") in accordance with the terms and conditions of this Agreement, the attached Exhibits and any Project Service Agreements ("PSAs"), which may be in the form of Purchase Order, and are attached hereto and incorporated herein by reference.

   Time is of the essence for completion of all Services. Contractor shall complete the Services in accordance with the schedules set forth in any applicable PSA, purchase order, and approved quote document. Contractor shall not be eligible for additional compensation for fixed price quotes or PSAS should a project be delayed due to Contractor's actions or delays. Only delays caused by forces beyond Contractor's reasonable control as outlined in Section 10 shall be exempt from this provision.

   In all cases, Contractor shall be responsible for the following:

   A. <u>Safety of onsite personal:</u>  Contractor shall be responsible for maintaining safe work practices for all onsite personnel and activities.  Safe work practices are outlined in the Zayo Standards Manual and shall be strictly adhered to by Contractor and its employees, subcontractors and/or agents. The safety of Contractor personnel as well as traffic on Zayo's equipment must be Contractor's first priority. All the appropriate work clothing, footwear, safety glasses/laser safety goggles, insulated tools, nonconductive ladders and rubber isolation padding, etc. will be supplied by the Contractor.

   B. <u>OSHA documents:</u>  OSHA requirements for onsite safety and safe work environment can be found online at www.osha.com.  All work safety regulations that are put forth in the

1

DocuSign Envelope ID: 35A86DAE-3C21-4A79-BE7B-FD1D28715B78



OSHA job safety documents are U.S. law and must be conformed to by Contractor and all those in their employ whether employees, subcontractors or agents.

C. <u>Cleanliness of facility</u>:  Contractor shall be responsible for the careful moving of equipment and materials within Zayo or Zayo-affiliate facilities. The Contractor will be responsible for keeping dust to a minimum around all equipment. This will require a non-static vacuum with a HEPA filter to be used on any work that creates dust or metal filings. The Contractor will leave the facility clear of any debris or job related packaging.

D.  <u>Method of procedure</u>: Contractor is responsible for the proper execution of an approved Method of Procedure ("MOP") document. There will be a MOP created and approved by Zayo for any power work or central office cabling for a POP facility, Collocation site, or local central office.

E. <u>Tools and Material</u>:  All tools and materials necessary to complete the Services are the responsibility of the Contractor unless otherwise stated in a PSA or approved quote.

F. <u>Zayo Close-Out Package Documentation</u>: Contractor shall be responsible for the proper documentation of all work performed for Zayo or its affiliates. The documentation Zayo requires is referred to as close out package documentation ("Close-Out Package").  All Close-Out Package information will need to be completed and submitted to Zayo's Implementation Management before payment for work performed will be authorized.

Close-out package documentation will be similar in form and content as that attached as Exhibit B to this Agreement.

**3.  SCHEDULE**

Contractor shall complete the Services in accordance with the schedule set forth in the Project Service Agreement(s). Company may require Contractor to alter the schedule with respect to the order of completion of particular segments of the Services.  The parties expressly agree that the Contractor shall not be entitled to any increase in the Contract Price nor shall Contractor be entitled to any extension of the completion date as a result of any such schedule change by the Company that involves only a change of order of service and not materials or equipment.

**4.  LIQUIDATED DAMAGES**

Time is of the essence in the performance of the Services by Contractor. Contractor shall complete the Services for each milestone by the scheduled completion date for such milestone outlined in each Project Service Agreement. Contractor acknowledges that if the Services are not complete for each milestone by the scheduled completion date, Company may suffer damages in an amount which is uncertain or difficult to estimate.  Therefore, Contractor agrees that, in addition to all other remedies available to Company, if the Services are not complete by the scheduled completion date, Contractor shall continue to complete the Services, but shall pay to Company as liquidated damages in the amount of one thousand dollars ($1,000) for each calendar day of delay beyond the scheduled completion date. Contractor shall pay such liquidated damages to



Company in the form of a reduction in the Contract Price. A failure to meet any timelines is a default hereunder and no notice shall be required of such default.

    A. Contractor and Company agree that the amount of liquidated damages is a reasonable pre-estimate of the probable damages to Company.

    B. The payment of such damages shall not release Contractor from its obligations to otherwise fully perform under this Agreement. Upon request by Company, Contractor shall furnish to Company such evidence as Company may require to confirm Contractor's ability to fully perform under this Agreement in the manner and within the time permitted.

5. **Service Fees and Invoicing:** During the term of this Agreement, Zayo shall pay Contractor for the Services at the rates set forth in a Purchase Order or PSA ("Service Fees"). Zayo shall remit payment to Contractor for all approved invoiced fees within forty five (45) days of Zayo's receipt of a valid invoice.

- Invoice Requirements: All invoices must include the following:
  a) Contractor name and address information.
  b) Spec number and site address.
  c) Detailed description of the work that was performed.
  d) Drive time information (if the work was not a lump-sum quote).
  e) Hours worked by lead tech and additional crew (if the work was not a lump-sum quote).
  f) Zayo Purchase Order number

- Time and Expense: In the event Contractor intends to incur travel expenses in connection with performing Services in a remote location (i.e., a location which requires air travel by a Contractor representative in order to perform the Services), such travel plans and expenses must be approved by Zayo prior to incurrence. Zayo will reimburse Contractor for all reasonable, actual, out-of-pocket travel expenses incurred by Contractor in the performance of the Services, which may include transportation, lodging, and meals, only if such expenses were pre-approved in writing by Zayo and substantiated by invoices and receipts. Contractor will make all travel arrangements in an economic and commercially reasonable manner based on Zayo's service priorities. Contractor will provide Zayo with actual travel expense reports and associated copies of all applicable receipts for reimbursement within one week of trip completion. Reimbursement of undisputed payments will be provided to Contractor within forty five (45) days of invoicing. Contractor shall adhere to Zayo's travel and expense policies when traveling on behalf of Zayo.

6. **Warranty of Services**: Contractor warrants that the Services performed under this Agreement conform to the Agreement requirements and are free from defects in design or workmanship performed by the Contractor or any of its subcontractors (the "Services Warranty"). This Services Warranty shall remain in effect for twelve (12) months from the date Services are completed.

3

DocuSign Envelope ID: 35A86DAE-3C21-4A79-BE7B-FD1D28715B78



The Contractor shall remedy at its expense any such defect or failure to conform and is responsible for any damages to persons and property resulting from such defects or failure to conform. The Contractor shall also restore any Services damaged in fulfilling the terms of this Services Warranty.

If, within the warranty period, any defect appears, then Zayo shall have the right to take the following actions:

    (a) Retain such defective items or work and an equitable reduction will be made in the Service Fees for such defective items or work; or

    (b) Return such defective items to the Contractor and require Contractor to repair or replace such defective items. Such repair or replacement shall be at no cost to Zayo, including all related shipping costs and import duties, if applicable. Responsibility for the items while in transit shall be borne by the Contractor; or

    (c) Correct or replace such defective items or work with similar items and recover the total cost incurred by Zayo, including shipping costs and import duties, if applicable, from the Contractor provided that the Contractor has been given the opportunity to cure the defective items and has been unable or unwilling to do so; or

    (d) Require the Contractor to correct or replace the defective items or work.

**7.** **Insurance:** Prior to commencement of the Services, and at all times during the performance of the Services, Contractor shall secure and maintain insurance coverage, naming Zayo as an additional insured: (i) not less than $2,000,000 combined single limit liability insurance, on an occurrence basis, for personal injury and property damage; (ii) workers compensation insurance in amounts required by applicable law and employers liability insurance with a limit of at least $1,000,000 per occurrence; and (iii) automobile liability insurance covering death or injury to any person or persons or damage to property arising from the operation of vehicles or equipment with limits of not less than $1,000,000 per occurrence.

**8.** **Limitation of Liability:** Except with respect to a party's obligations under Sections 7 and 8, as well as gross negligence and willful misconduct, in no event shall either party be liable to the other, and each party hereby releases the other from any indirect, special, exemplary, punitive or consequential damages, lost profits or lost revenues related to this Agreement and/or the performance of the Services hereunder regardless of the form of action, even if such party has been advised of the possibility of such damages.

**9.** **Indemnification:** Each party agrees to defend and indemnify the other and its affiliates, officers, directors, employees, agents and subcontractors and hold them harmless against any damages and expenses (including reasonable attorney's fees and costs), incurred in connection with any third party claims related to the bodily injury or death to any person, or for any injury, loss or damage to a party's or any third party's tangible or intangible property resulting from a party's performance or non-performance of its obligation hereunder or failure to observe any applicable laws, except to the extent such claims are caused by the

4

DocuSign Envelope ID: 35A86DAF-3C21-4A79-BE7B-FD1D28715B78



negligence or willful misconduct of the indemnified party or its employees, agents, subcontractors or invitee.

10. **Confidentiality**. Any written information, drawings or data disclosed by Zayo to Contractor, its employees, agents or representatives, as well as the results of the Services performed by Contractor for Zayo and all information becoming known to Contractor concerning Zayo's inventions, discoveries, improvements, methods, business plans, customers, ventures, practices, enterprises, exploration, production, transmission, or operation, or any other information concerning the business of Zayo shall be deemed to be confidential and proprietary information of Zayo, and shall be protected by Contractor in the same manner and with the same degree of care the Contractor treats its own confidential or proprietary information during the term of and after the termination of this Agreement. Contractor shall promptly upon completion of the Services, or on demand by Zayo, return all such information and reproductions therefrom to Zayo. Such proprietary or confidential information shall not be disclosed to any third person or entity without the prior written consent of Zayo. Confidential or proprietary information shall be treated in the manner specified above until such time as: (i) such information is otherwise available in the public domain, (ii) such information shall be established to have been lawfully known by Contractor prior to receipt of such information from Zayo or becomes known by Contractor through a third party not subject to non-disclosure requirements, or (iii) such information is required to be released by a valid law, regulation or court order, and sufficient notice is given by Contractor to Zayo of any such requirement or request to permit Zayo to seek an appropriate protective order or exemption from such requirement or request. Contractor shall ensure its employees and subcontractors, if any, observe the maintenance of confidentiality and restriction on use set forth herein.

11. **Notices:** Any notices sent to Contractor under this Agreement must include a copy to Contractor at _7 Hanover Square, 8th Floor, New York, NY 10004. In kind, any notices sent to Zayo under this Agreement must include a copy to Zayo's General Counsel at 1805 29th Street, Suite 2050, Boulder, CO 80301.

12. **Delays in Performance:** Zayo will not hold Contractor responsible for damages or delays in performance caused by force majeure, acts of God, orders or directives of governmental authorities, or other events beyond the control of Contractor which could not have been reasonably foreseen or prevented. For purposes of this provision, such acts or events shall include, but shall not be limited to, unusually severe weather conditions, floods, epidemics, war, riots, strikes, lockouts, or other industrial disturbances, or the unavailability of utility. Should any such act or event occur, Contractor shall immediately notify the other of such event and its expected duration as well as its expected impact on the completion of the Services. Both parties shall use their best efforts to overcome any such difficulties and to resume performance of the Services as soon as possible.

13. **Compliance with Laws**: Parties shall comply with all laws regulations, codes, ordinances, and other applicable governmental requirements in effect, including without limitation building

5

DocuSign Envelope ID: 35A86DAE-3C21-4A79-BE7B-FD1D28715B78



codes, life safety and similar codes, and all environmental laws and regulations in the performance of this Agreement.

14. **Independent Contractor:** Contractor's relationship to Zayo in the performance of this Agreement is that of an independent contractor. Nothing contained herein shall be construed to create a partnership, joint venture or fiduciary relationship between Zayo and Contractor. Contractor shall have all of the obligations and responsibilities of an employer towards it employees, agents and representatives engaged in the providing the Services hereunder.

15. **Personnel and Subcontractors:**  Contractor must notify Company in writing of the use of subcontractors in the performance of services hereunder prior to the initiation of work. Any employees (including a subcontractor or its employees) of Contractor deemed by Company, in its sole judgment, to be objectionable shall be promptly replaced by Contractor at no additional expense to Company.

    If requested by Company, Contractor shall furnish Company with the names of Contractor's employees, subcontractor's employees, and others who have performed or are performing the Services hereunder.

16. **Right to Audit:** Contractor shall keep full and accurate records of all costs incurred and items billed in connection with this Agreement, which records shall be open to audit by Zayo, or any authorized representative of Zayo, during the course of this Agreement and until two (2) years after termination or expiration of this Agreement and PSA.

17. **Amendment; Notification; Waiver; Assignment; and Entire Agreement:** No subsequent agreement between Zayo and Contractor concerning the subject matter hereof nor any modification, amendment or waiver to this Agreement or any of the provisions of this Agreement shall be effective or binding unless it is made in writing and signed by both parties. Neither party may, without the other party's prior written approval (which shall not be unreasonably withheld, conditioned or delayed), voluntarily or involuntarily assign, convey, transfer, pledge, mortgage or otherwise encumber all or any portion of its interests in this Agreement, except Zayo may assign this Agreement to an affiliate or any person or entity which, through merger, reorganization, acquisition or otherwise, succeeds to all or substantially all of Zayo's business, without the need for Contractor approval. This Agreement sets forth the entire understanding of the parties and supersedes any and all prior agreements, arrangements, or understandings related to the subject matter described herein, and no representation, promise, inducement or statement of intention has been made by either party which is not embodied herein.

18. **Authority:** Zayo and Contractor each represent and warrant that they have full power and authority to execute, deliver and perform their respective obligations under this Agreement. The respective signatories for Zayo and Contractor each individually represent and warrant that they are duly authorized to execute this Agreement so as to bind the entity on whose behalf such signatory executes this Agreement.

6

DocuSign Envelope ID: 35A86DAE-3C21-4A79-BE7B-FD1D28715B78



19. **Choice of Law; Venue; Attorney's Fees:** This Agreement shall be construed and enforced in accordance with the laws of the State of Colorado. If any party to this Agreement institutes any proceeding in court to enforce any provision of the Agreement, or for damages by any reason of any alleged breach of this Agreement, such proceeding shall be instituted in a state court in Boulder County, Colorado. The prevailing party in any proceeding will be entitled to recover from the other party all costs of the suit, including, without limitation, court costs and such amounts as the court may award as reasonable attorney's fees for services rendered to the prevailing party during the proceedings.

Zayo Colocation, LLC                                   Contractor

By:  *Gregg Strumberger*                               By:  _____
     B3B0C76CF63E4A8...

Name:  Gregg Strumberger                               Name:  _____

Title:  General Cousel, ZFTI                           Title:  _____

Date:  7/13/2014                                       Date:  _____

7

DocuSign Envelope ID: 35A86DAE-3C21-4A79-BE7B-FD1D28715B78



**Exhibit A – Project Service Agreement**

Project Service Agreement No. ___

Purchase Order No. _____

This Scope of Work is effective as of _____, (the "Effective Date"), by and between Zayo Colocation, LLC (the "Company"), together with its affiliates, and _____ (the "Contractor"). This Scope of Work is entered into and governed by the Master Services Agreement dated _____.

**Scope of Work:**

*Describe work: What? Where? Who provides materials? Is there a map?*

**Contractor Representative:** _____

**Company Project Manager:** _____

**Special Instructions and Directions:**

_____

_____

_____

**Schedule:**

The Project  shall begin on _____and shall be completed no later than _____.

**Contract Price:**

The total compensation to the Contractor for these services shall be based on the Price List for lengths and quantities detailed below:

[INSERT PRICING DETAILS]

The parties agree that all terms and conditions of the original Agreement remain unchanged except as hereby modified.

Zayo Colocation, LLC                                CONTRACTOR

By:_____                By:_____

Name:_____               Name:_____

8

DocuSign Envelope ID: 35A86DAF-3C21-4A79-BE7B-FD1D28715B78

Title:_____      Title:_____

Date:_____      Date:_____



Exhibit B – Closeout Package

| zColo | | | |
|---|---|---|---|

| PROJECT INFORMATION / CLOSE-OUT | | | |
|---|---|---|---|
| **Name:** | **Completion Date:** | | |
| **Location:** | **Start Date:** | | |
| **Job#:** | **Close-Out Date:** | | |
| **Description:** | | | |

| # | DESCRIPTION | DATE | COMPLETED | COMMENTS / FILE LOCATION |
|---|---|---|---|---|
| DOCUMENTATION / TECHNICAL DATA (DELIVERABLES) | | | | |
| **BID RELATED DOCUMENTS** | | | | |
| 1 | Bid Documents from Architect/Engineer | | | |
| 2 | Bid Analysis | | | |
| 3 | Contractor Insurance Certificate | | | |
| 4 | Sub-Contractor Directory | | | |
| **CONTRACT DOCUMENTS** | | | | |
| 5 | Contract Drawings (latest Revisions) | | | |
| 6 | Contract Specifications (Latest Revisions) | | | |
| | Sketches | | | |
| **CONTRACT & AGREEMENTS** | | | | |
| 7 | General Contractor /Construction Manager Contract | | | |
| 8 | Drawings/Manifest | | | |
| 9 | Specifications | | | |
| 10 | Vendor Purchase Orders | | | |
| 11 | Change Orders/Log | | | |
| 12 | Partial Lien Waivers | | | |
| 13 | Final Lien Waivers | | | |

10



| 14 | Verification of Final Punch List Completion | | |
|---|---|---|---|
| **AS BUILT DOCUMENTS (CADD generated discs, as available)** | | | |
| 15 | MEPS | | |
| 16 | Furniture Plan | | |
| 17 | Control Diagrams | | |
| 18 | Other (Telcom, Glass, Transwall, Millwork) | | |
| 19 | Test & balance reports | | |
| **PERMIT/CERTIFICATION DOCUMENTS** | | | |
| 20 | Copies of original permits | | |
| 21 | Certificate of Occupancy (as required) | | |
| 22 | All applicable Permits and Certifications have benn Obtained and signed off and a copy attached.(plumbing, sprinkler, BEC, Class E, Letter of Completion,etc) OT & MH,"Class E", Plumbing, Electrical, Sprinkler, Letter of Defect | | |
| 23 | Certificate of inspection for All appropriate equipment and systems (EUP, etc). | | |
| 24 | All applicable controlled Inspections have been signed off and a copy attached (steel, ventilation, fireproofing, fire stopping, etc). | | |
| 25 | ACM Survey (if obtained-Required for permitted projects- ACP-5 or ACP-7 | | |
| **ELECTRICAL PANEL AND PANEL BOARD SCHEDULE DATA** | | | |



| 26 | Panel and Panel board Schedules | | |
|---|---|---|---|
| 27 | Copies of Schedules mounted in Panels | | |
| | | | |
| **IDENTIFICATION OF EQUIPMENT** | | | |
| 28 | Valve identification tagging and Wall-mounted location charts | | |
| 29 | Permanently affixed labels for Major equipment, system accessories and controls | | |
| **OPERATION & MAINTENANCE MANUALS (Refer to Contract Specifications to develop list)** | | | |
| 30 | Software users manual/electronic backup | | |
| 31 | Site specific customized O&M instrucitons | | |
| 32 | Manufacturers O&M instructions | | |
| **SPARE PARTS LIST/ATTIC STOCK** | | | |
| 33 | All applicable maintenance parts and accessories or materials | | |
| **WARRANTY INFORMATION** | | | |
| 34 | Equipment start-up | | |
| 35 | Equipment Operation | | |
| 36 | Warranty/ Guaranty Letter | | |
| 37 | Warranty/ owner Manual- Pantry equipment | | |
| **MISCELLANEOUS ( Add as required)** | | | |
| 38 | Project Correspondence | | |
| 39 | Sub Meeting Minutes | | |
| 40 | Client Meeting Minutes | | |
| 41 | Before and After Photos | | |
| 42 | MSDS Sheetes | | |
| 43 | Accident/Incident Report | | |



| 44 | RFI'S/Log | | |
|---|---|---|---|
| 45 | Submittals/Log | | |
| 46 | Schedules | | |
| 47 | Punch List/ Verification of Completion | | |
| 48 | Preliminary site Inspection Report | | |
| **COMMISSIONING & TESTING** | | | |
| 49 | Include coordination study and short circuit analysis if applicable. | | |
| 50 | Electrical tests and certification | | |
| 51 | Static pipework pressure testing (dry risers/ sprinklers/ hosereels/ chiller vent pipework etc) | | |
| 52 | Designated, un-obstructed building exit and entrance routes with emergency lighting and singage for emergency evacuation and fire fighting | | |
| 53 | All safety and hazard equipment and warning/instructions signs in place | | |
| 54 | Complete and functional standby power systems (i.e. generators, UPS equipment etc) | | |
| 55 | Load shedding practical completion tests | | |
| 56 | Inspection Reports- Field Welding | | |
| 57 | Offsite- testing reports (Manufacturers and witness tests) | | |
| 58 | Complete commissioning and testing records and documentation | | |
| | Sprinkler Hydraulic Calculations | | |

13



| WALK THROUGHS TO UNDERSTAND THE EQUIPMENT LAYOUT (ATTENDANCE RECORDS TO BE ATTACHED | | | |
|---|---|---|---|
| 59 | Operational Staff Training | | |
| **REPORTING/NOTIFICATION** | | | |
| 60 | Project close-out report | | |
| 61 | PM Letter to Client Completion Letter | | |
| 62 | PM Letter to Contractor Completion Letter | | |

| SIGNATURES REQUIRED |
|---|

| **General Contractor:** |
|---|
| Name:                                    Date: |
|  |

| **Client's Representative:** |
|---|
| Name:                                    Date: |
|  |

| **Engineer / Architect:** |
|---|
| Name:                                    Date: |
|  |

14

# EXHIBIT 2

# EXHIBIT A

STATEMENT OF WORK – NO.: **zColo – Data Center Expansion Project – Phase 2 Build-Out**

Associated Purchase Order Number(s): PO#ZAYO131725 & PO#ZAYO<mark>xxxxxx</mark> for all associated work.

This Statement of Work dated February 13, 2014 incorporates the terms and provisions of the Construction Management Services Agreement entered into by Zayo Colocation, Inc. ("Owner") and Ocean Pacific Interiors, Inc. ("Construction Manager") dated February 13, 2014.

*This Scope of Work for this Project is as follows:*
Demo remaining office space, addition of approx. 6,500 sq ft of raised flooring to expansion area, demo and install new ceiling to match existing.  Scope includes miscellaneous electrical, mechanical, fire protection, plumbing modifications & new installations to be performed as described on the Gensler & JB&B Drawings filed for permit with the Village of Mount Prospect. Scope also includes:

- Furnish and Install all scope of work as per JBB, Gensler, Thornton Tomasetti, Watermark Engineering Drawing Manifest, and as per JBB specifications.
- Furnish and Install all equipment; zColo will not be pre-purchasing any of the equipment on this project. OPI shall coordinate all pre-purchase items inclusive of (2) New 2MW Gen-sets and associated ATS's, all New ATS's/MTS's as reflected on design drawings, New Switchgear and panel boards as reflected on design drawings, New 1,000kW / 1100KVA UPS Modules and Batteries, (2) New Air Cooled Refrigeration Machines as specified on drawings, New chilled water AC's as specified on drawings.
- Shipping to the site is included.
- Customer training on all new equipment is included.
- Permits and associated fees are included.
- TPI review fees are included.
- Retaining a Licensed IL Structural Engineer and all associated fees to evaluate existing joist capacity for hung loads due to no existing joists is included.
- Any additional structural work for piping supports due to Structural Engineer review and all associated costs included.
- All valves on chilled water piping to be high performance valves.
- 1 Year warranty included.
- Start-up and Commissioning Included.
- Commissioning Agent and associated fees are included.
- All testing as specified in the drawings is included.
- Furnish and Install of Load banks are included.
- Daily cleaning of site and protection of "Live" data center space is included.
- Coordination with ComEd for the New meter is included.
- Covrit shall be the vendor utilized for furnishing of new Clapboard Panels.
- Roofing modifications/patches due to removal of exhaust fans, RTU patch work, and sky-light removal is included.
- Grounding of Raised Flooring and all grounding per drawings and specifications is included.
- Furnish and Install of the Veris metering included as coordinated with zColo.
- Where there is no hung ceiling, all electrical and detection system work shall be in conduit.
- Conduit, conductors, and tie-in of the new generators into GDP-1 via MTS-GEN-1, inclusive of Furnish and Install of 3,000A unfused disconnect switch is included.
- BMS scope of work is included.
- Security scope of work is included.

- All formal MOP's and shutdown coordination is included.
- Over Time as required is included.
- Sales Tax is included.

A. <u>Introduction</u>.
   Address: Located at 800 Business Center Drive, Mount Prospect, Illinois.
   Description of Project/Project Scope of Work: Gaikai & Akami Space – Phase 2 Expansion
   Zayo Purchase Order Number Reference: PO#ZAYO131725 & PO#ZAYO<mark>xxxxxx</mark>

B. Points of Contact. OPI – Oliver Papraniku,  ZAYO -Nat Tafuri

**CONSTRUCTION MANAGER**                          **OWNER**

Name: Ocean Pacific Interiors, Inc.               Name: Zayo Colocation Inc.
Address: 74 Broad Street, 6th Floor          Address: 400 Centennial Parkway, Suite 200
   New York, NY 10004                             Louisville, CO 80027

Phone: 212-239-1557                               Phone: 303-475-0956


Name: Oliver Papraniku                            Name: Nat Tafuri
Address: 74 Broad Street, 6th Floor          Address: 400 Centennial Parkway, Suite 200
   New York, NY 10004                             Louisville, CO 80027

Phone: 212-239-1557                               Phone: 303-475-0956


C. <u>Project Schedule</u>.
   i.     Milestone Event Dates for Subcontractors.  TBD Provide Current Schedule dated

   ii.    Dates for Completion of Deliverables.      July 1st, 2014
          a.     Fully Commissioned and Operable Site:   July 1st, 2014
          b.     Material Deliverables: TBD based on final completion schedule of July 1st, 2014.
          c.     Other Deliverables: TBD


D. Project Costs.
   **i.**    Project Compensation.  The entire project cost, including all Project Fees, General Condition's and Insurance is ($9,100,000.00) **Nine Million One Hundred Thousand and 00/100 Dollars.**
   **ii.**   **PO#ZAYO131725** has been issued in the amount of **$8,173,054.00**
   **iii.**  **PO#ZAYO<mark>xxxxxx</mark>** to be issued in the amount of **$926,946.00**


E. <u>Deviations from Terms of Agreement</u>.
   Yes ___          No <u>X</u>

IN WITNESS WHEREOF, Owner and Construction Manager have executed this SOW.

ZAYO COLOCATION, INC.

By: _____

Name: Greg Friedman

Title: Vice President, zColo

Date: 6/5/2014

Ocean Pacific Interiors, Inc

By: _____

Name: Oliver Papraniku

Title: President

Date: 6/5/2014

DocuSign Envelope ID: 0659EF9E-E59E-4EA0-8211-01F40D469222

# Drawing Manifest

**DRAWING MANIFEST**
**800 Business Center Drive (Phase 2), Mt. Prospect Illinois**

| Drawing Number | JBB - Issued for Town Review 12/13/13 | Gensler - Issued for Permit 12/16/13 | Gensler - Issued for Permit 12/20/13 | Gensler/JBB - Issued for Permit 12/20/13 | TT - Revised for Permit - 1/14/14 | WE - Issued for Permit - 1/17/14 | Gensler/JBB - Revised for Permit - 1/20/14 | TT VE Revisions 1/22/14 | JBB Issued for VE Revisions 1/22/14 | Gensler VE Revisions 1/24/14 | Civil Issued for Construction/Issued for Permit Revised 2/21/14 | Gensler Issued for Constrcution 2/24/14 | Structural Issued for Construction 2/24/14 | JBB Issued For Construction 2/24/14 | JB&B/Gensler/ Structural Issued For Bulletin #1 03/11/14 | JB&B Issued For Revision 3/17/14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DE-101 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| L1.0 |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  |  |
| DP-100 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| DP-101 |  |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| DSP-100 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| DM-100 |  |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| C-100 |  |  |  |  |  |  |  |  |  |  | x |  |  |  |  |  |
| C-101 |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |
| C-102 |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |
| C-103 |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |
| C-104 |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |
| C-105 |  |  |  |  | x |  |  |  |  |  |  |  |  |  |  |  |
| L-100 |  |  |  |  | x |  |  |  |  |  | x |  |  |  |  |  |
| A00.00 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.01 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.05 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| A00.10 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.11 |  |  |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.30 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.31 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.50 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A00.51 |  | x | x | x |  |  |  |  |  | x |  | x |  |  |  |  |
| A01.01 |  |  |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A02.01 |  | x |  | x |  |  | x |  |  | x |  | x |  |  |  |  |
| A03.01 |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| A04.01 |  | x | x | x |  |  |  |  |  | x |  | x |  |  | x |  |
| A05.01 |  | x |  | x |  |  |  |  |  |  |  | x |  |  |  |  |
| A11.00 |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| A12.00 |  | x |  | x |  |  |  |  |  | x |  | x |  |  |  |  |
| A12.01 |  | x |  | x |  |  | x |  |  |  |  | x |  |  |  |  |
| A12.02 |  | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| A12.03 |  | x |  | x |  |  |  |  |  | x |  | x |  |  |  |  |
| S0-001 |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |  |
| S0-002 |  |  |  | x |  |  |  |  |  |  |  |  | x |  |  |  |
| S1-100 |  |  |  | x |  |  |  | x |  |  |  |  | x |  |  |  |
| S1-101 |  |  |  | x |  |  |  | x |  |  |  |  | x |  |  |  |
| S1-200 |  |  |  | x | x |  |  | x |  |  |  |  | x |  |  |  |
| S2-100 |  |  |  | x |  |  |  | x |  |  |  |  | x |  |  |  |
| S5-100 |  |  |  | x |  |  |  | x |  |  |  |  | x |  | x |  |
| ESK-001 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |
| ESK-002 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |
| ESK-003 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | x |
| E-001 | x |  |  | x |  |  | x |  | x |  |  |  |  | x | x |  |
| E-002 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| E-100 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-101 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-101C | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-201 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-300 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| E-301 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| E-302 | x |  |  | x |  |  | x |  | x |  |  |  |  | x | x |  |
| E-400 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-401 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-500 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-501 | x |  |  | x |  |  | x |  | x |  |  |  |  | x | x |  |
| E-502 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| E-600 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| E-601 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| E-602 | x |  |  | x |  |  |  |  |  |  |  |  |  | x |  |  |
| M-001 | x |  |  | x |  |  |  |  |  |  |  |  |  | x |  |  |
| M-100 | x |  |  | x |  |  | x |  |  |  |  |  |  | x | x |  |
| M-101 | x |  |  | x |  |  | x |  | x |  |  |  |  | x | x |  |
| M-102 | x |  |  | x |  |  |  |  |  |  |  |  |  | x |  |  |
| M-103 | x |  |  | x |  |  |  |  |  |  |  |  |  | x |  |  |
| M-200 | x |  |  | x |  |  | x |  |  |  |  |  |  | x | x |  |
| M-300 | x |  |  | x |  |  | x |  | x |  |  |  |  | x |  |  |
| M-400 | x |  |  | x |  |  | x |  |  |  |  |  |  | x | x |  |
| M-500 | x |  |  | x |  |  | x |  | x |  |  |  |  | x | x |  |
| P-001 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| P-100 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| P-200 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| P-300 | x |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| SP-001 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| SP-100 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| SP-200 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| FA-101 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |
| FA-400 | x |  |  | x |  |  | x |  |  |  |  |  |  | x |  |  |

# EXHIBIT 3



| | | Date | 7/28/2014 |
|---|---|---|---|

**Billing Address:**

400 Centennial Pkwy
Suite 200
Louisville, CO 80027
Attention: Accounts Payable

**Vendor:**

Ocean Pacific Interiors, Inc.
74 Broad Street
6th Floor
New York NY    10004

**Ship To:**

Zayo Group, LLC
Tony Qorri
800 E Business Center Dr
Mount Prospect IL    60056

**Contract Number:**

| Shipping Method | Payment Terms | Confirm With | Page |
|---|---|---|---|
| BESTWAY | NET 30 | | 1 |

| Item / Ship Method | Project Number | Cost Category ID | Req. Date | U/M | Ordered | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| ONSTRUCTION | 70ILRIOT0001 | COLO-PM-POWE | 7/28/2014 | Each | 421,946.00 | $1.00 | $421,946.00 |
| Additional monies requested for upgrading electrical system to Riot Game Power Needs. Includes additional UPS Capacity and PDU Capacity along with Switchgear breaker upgrades. | | | | | | | |

This Purchase Order and the goods and/or services contained herein are governed by Zayo's Purchase Orders Terms and Conditions.

| | |
|---|---|
| Subtotal | $421,946.00 |
| Trade Discount | $0.00 |
| Freight | $0.00 |
| Miscellaneous | $0.00 |
| Tax | $0.00 |
| Order Total | $421,946.00 |



| | Date | 7/21/2014 |
|---|---|---|

**Billing Address:**

400 Centennial Pkwy
Suite 200
Louisville, CO 80027
Attention: Accounts Payable

**Vendor:**

Ocean Pacific Interiors, Inc.
74 Broad Street
6th Floor
New York NY    10004

**Ship To:**

Zayo Group, LLC
Tony Qorri
800 E Business Center Dr
Mount Prospect IL    60056

**Contract Number:**

| Shipping Method | Payment Terms | | Confirm With | | Page | |
|---|---|---|---|---|---|---|
| BESTWAY | NET 30 | | | | 1 | |

| Item / Ship Method | Project Number | Cost Category ID | Req. Date | U/M | Ordered | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| CONSTRUCTION | 70ILAKAM0005 | COLO-PM-POWE | 7/25/2014 | Each | 505,000.00 | $1.00 | $505,000.00 |
| Additional monies requested for upgrading electrical system to Includes additional UPS Capacity and PDU Capacity along with Switchgear breaker upgrades. | | | | | | | |

This Purchase Order and the goods and/or services contained herein are governed by Zayo's Purchase Orders Terms and Conditions.

| | |
|---|---|
| Subtotal | $505,000.00 |
| Trade Discount | $0.00 |
| Freight | $0.00 |
| Miscellaneous | $0.00 |
| Tax | $0.00 |
| Order Total | $505,000.00 |



| | Date | 2/13/2014 |
|---|---|---|

**Billing Address:**

400 Centennial Pkwy
Suite 200
Louisville, CO 80027
Attention: Accounts Payable

**Vendor:**

Ocean Pacific Interiors, Inc.
74 Broad Street
6th Floor
New York NY 10004

**Ship To:**

Zayo Group, LLC
Nat Tafuri (303) 381-4690
800 E Business Center Dr
Mount Prospect IL 60056

**Contract Number:**

| Shipping Method | Payment Terms | Confirm With | Page |
|---|---|---|---|
| BESTWAY | NET 30 | | 1 |

| Item / Ship Method | Project Number | Cost Category ID | Req. Date | U/M | Ordered | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| ISP INSTALL | 70NJGAIK0003 | COLO-PM-POWE | 2/20/2014 | Each | 8,173,054.00 | $1.00 | $8,173,054.00 |
| Data Center Build out per Gensler, JB&B Design Drawings and OP | | | | | | | |

This Purchase Order and the goods and/or services contained herein are governed by Zayo's Purchase Orders Terms and Conditions.

| | |
|---|---|
| Subtotal | $8,173,054.00 |
| Trade Discount | $0.00 |
| Freight | $0.00 |
| Miscellaneous | $0.00 |
| Tax | $0.00 |
| Order Total | $8,173,054.00 |

EXHIBIT 4

## PARTIAL RELEASE OF LIEN RIGHTS AND RELATED MATTERS AGREEMENT

Contractor:                 Zayo Group LLC
                            400 Centennial Pkwy, Suite 200
                            Louisville, CO 80027

Project:                    Mount Prospect 800 Business Drive Phase 2


Subcontractor/Claimant:     Ocean Pacific Interiors Inc.

In consideration of receiving a payment from Zayo Group LLC in the amount of **$388,989.81, Ocean Pacific Interiors Inc.,** and its corporate parents, affiliates, subsidiaries, employees, agents, subcontractors, materialmen, successors and assigns (collectively, the "Claimant") hereby agrees and acknowledges it has received partial payment for all work, services, materials and equipment provided to the construction project located at **800 Business Drive, Mt Prospect, IL 60056** (the "Project") due and owing as of this date. To that end, Claimant, as of this date, releases and discharges any claims, rights and/or judgments it has, or may have against, Zayo Group LLC, the owner of the real property located at **800 Business Drive, Mt Prospect, IL 60056** (the "Owner") relative to the Project. The Claimant represents and warrants that it has paid in full and has otherwise fully satisfied all of its obligations for all work, services, materials and equipment furnished and labor supplied by or on behalf of the Claimant on the Project.

Claimant sells, assigns and transfers to Zayo Group LLC, its successors or assigns, all of the Claimant's rights, title and interest to any claim, right, judgment or recovery relative to the Property and/or the Project that it has had, or may have as of this date, including Claimant's right to file and discharge mechanic liens. Claimant hereby appoints Zayo Group LLC as its attorney-in-fact for the purposes of discharging any lien Claimant may have filed on the Property. Claimant also agrees to execute such further documents as may be reasonably necessary to effectuate the assignment and transfer the aforementioned claims to Zayo Group LLC. Claimant represents and warrants it has not filed a mechanic's lien on the Property as of this date, and in the future shall not file a mechanic's lien on the Project for the claims released and discharged herein. Claimant further represents that, as of this date, all suppliers of labor, equipment, materials, superintendence, or any other service or commodity, whether under direct contractual obligations to the Claimant or not, who have contributed directly or indirectly to the Claimant's fulfillment of its contractual obligations relating to the Project, have been paid in full (or shall be paid in full within seven (7) days) and there are no outstanding claims, demands, fines, or unsettled disputes between the Claimant and any of its subcontractors, materialmen, or suppliers. In the event that the Claimant hereafter becomes aware of any such claim, demand, or dispute, the Claimant agrees to notify Zayo Group LLC writing within three (3) calendar days and to immediately discharge or satisfy any such claim, demand, or dispute at the Claimant's sole expense. Claimant(s) further agrees, upon Zayo Group LLC's request, to immediately provide Zayo Group LLC or its designee with such further releases, and releases of liens, and any other requisite instruments from itself and its subcontractors and suppliers as Deutsche Bank may require within three (3) days of Zayo Group LLC's written request.

Claimant agrees to indemnify, protect, defend and hold Zayo Group LLC harmless from and against all losses, damages, expenses or liabilities of every kind whatsoever which arise from or are related to a breach of any term of this agreement, including without limitation, all losses arising from or in connection with all suits, proceedings, claims and/or demands from third parties and/or all damages, costs, fines and/or penalties of any kind whatsoever by any governmental entity, and any all claims, demands or losses of every kind whatsoever by Zayo Group LLC's surety on this project (if any), which are suffered, incurred, sustained or required to be paid by Zayo Group LLC, including without limitation all legal costs including attorneys' fees and court costs incurred in investigating and defending any of the above. In connection with this defense and indemnity obligation of the Claimant, Zayo Group LLC, shall have the right, in its sole and absolute discretion and upon notice to the Claimant, to employ separate

counsel in any such suit or proceeding and/or to participate in the defense thereof at the Claimant's expense. Further, to the extent any statement, covenant or representation made by Claimant herein is breached and/or is false, Zayo Group LLC will be entitled to recover all damages resulting therefrom including, but not limited to, all attorneys' fees incurred by Zayo Group LLC. Any and all litigation arising between the Claimant and Zayo Group LLC as a result of, but not limited to, liability, damages, costs, fines, and/or penalties incurred by Zayo Group LLC shall be litigated in New York and subject to New York state law. The undersigned represents and warrants that he or she is duly authorized to execute this document and bind the Claimant to the promises made herein.

This Partial Release of Lien Rights and Related Matters Agreement becomes effective upon Claimant's receipt of a check from Zayo Group LLC in the amount of **$388,989,81 payable to Ocean Pacific Interiors Inc.**

Dated: July 16, 2014

**CLAIMANT**: Ocean Pacific Interiors Inc.

BY: _____

TITLE: President

State of New York )

County of Queens )

Signed, subscribed and sworn to before me, a Notary Public in and of the State of New York, County of Queens, this 16 day of July, 2014

Notary Public My Commission Expires: July 23, 2016

*(signature: Denise Mallios)*

DENISE MALLIOS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA6264548
Qualified in Queens County
My Commission Expires July 23, 2016

# EXHIBIT 5

# O'HAGAN LLC

▶ VIA FEDEX OVERNIGHT
Kevin C. Rasp
312.422.6145 D
312.422.6110 FAX
krasp@ohaganlaw.com

January 16, 2015

Greg Friedman
1621 18th St.
Suite 100
Denver, CO 80202

    Re:    <u>Project Service Agreement No. 2-A</u>

Dear Greg,

An original signed copy of the First Amended Project Service Agreement (PSA No. 2-A) is enclosed for your client's final review and signature. The fully-executed agreement can be sent with the initial payment under the agreement directly to OPI, but please also forward our office a copy.

I appreciate your cooperation in the completion of this agreement and look forward to continued cooperation as we finish this project.

Sincerely,

Kevin C. Rasp

# FIRST AMENDED PROJECT SERVICE AGREEMENT

Project Service Agreement No. 2-A

Purchase Order No. _____

This First Amended Project Service Agreement No. 2 ("PSA No. 2-A") is effective as of the date of last signature below, (the "Effective Date"), by and between Zayo Colocation, LLC (the "Company"), together with its affiliates, and Ocean Pacific Interiors, Inc. ("Contractor"). This First Amended Project Service Agreement No. 2 amends the Project Service Agreement No. 2 dated September 25, 2014, and its associated Purchase Order entitled ZAYO164436 (collectively, the "PSA No. 2") for Services related to 800 Business Center Drive in Mt. Prospect, Illinois, (the "Project"), and waives and releases any associated claims or potential causes of action by any of the Parties related to PSA No. 2. Further, this First Amended Project Service Agreement No. 2 is entered into pursuant to the Master Services Agreement between the Company and the Contractor effective July 10, 2014, (the "MSA"), the MSA, any and all associated PSA(s), and any and all associated Purchase Order(s) subject to the PSA(s) and MSA referred to collectively as the "Agreement". Upon Contractor's completion of the Services and all related obligations specified in PSA No. 2-A, the Agreement shall thereby terminate in its entirety automatically with no further action by either Party and with no further liability or obligation to either Party.

## I. Scope of Work:

The Contractor shall perform all Services specified below:

Contractor shall:

- Prepare a hazardous management plan
- Furnish ATS with a BMS interface option
- Furnish and install a manual transfer switch (MTS)
- Perform all necessary changes to switchgear
- Provide temporary HVAC services
- Provide generator fuel
- Provide a temporary data center partition
- Perform all necessary sprinkler modifications including any exterior mechanical services in the exterior mechanical yard.
- Provide all UPS/battery support
- Provide all necessary conduit and wire to perform a MBB A Refeed
- Provide a UPS technician for all technical support and site visits.
- Provide all necessary cameras and card readers as depicted on the security drawings.
- Provide all BMS scope, including lighting for the power room
- Provide and perform all modifications to storage room
- Furnish and install variable frequency drive (VFD) for the air handling unit
- Perform all repairs to the damaged UPS/UPM modules
- Furnish and install 3,000A unfused disconnect for the GD-1 Gear

DocuSign Envelope ID: 189AFF11-12E9-44B9-998F-E93D529838DB

- Complete punch list on base contract, including but not limited to, the Uncompleted remaining "Base Contract" scope of work specified in Section C below;
- Complete all outstanding, approved punch lists, as set forth in greater detail on Exhibit A.

Contractor is responsible for all costs and expenses associated with the Services listed above, and for the performance of the deliverables required to complete the Contractor Responsibilities as set forth in further detail below. The only items of the PSA No. 2-A that will not be the responsibility of the Contractor are those expressly listed below as Company Responsibility. The Parties agree that the Company has made agreements related to the Project with vendors and other third parties who are not party to this agreement and further agree that these agreements do not expand or otherwise modify the Scope of Work or Services under the PSA No. 2-A , with the exception of the Company's engagement of vendors or other third parties for repair to the primary/permanent chiller system(s) which Contractor agrees in Section 1.D, below, that it will provide and/or fund. Any modifications to this PSA No. 2-A including, but not limited to, any modifications of the Scope of Work and/or Services to be provided at the Project, shall only be valid if set forth in a further amendment to this PSA No. 2-A which is then fully executed by both Parties.

Contractor affirms that it shall at all times make prompt and full payment to any vendors or subcontractors that it engages, or has previously engaged, in the performance of this PSA No. 2-A. Contractor further represents and warrants that it shall, no later than January 31, 2015, pay the amounts specified on Exhibit B (attached hereto) to those subcontractors specified therein who have pending mechanics lien claims either noticed or recorded as of the Effective Date.

A. <u>Material – Contractor Responsibility</u>

    ☒ Other material as required to meet Company and/or applicable ROW ("Right of Way") municipal and/or permit agency requirements.

B. <u>Construction – Contractor Responsibility</u>

    ☒ Furnish and install one (1) automatic transfer switch with a BMS interface option.

    ☒ Furnish and install one (1) manual transfer switch.

    ☒ Prepare a hazardous material management plan in accordance with the Mt. Prospect Fire Department's requirements.

    ☒ Provide all veris meters and breaker modifications to all switchgear (if necessary).

    ☒ Provide temporary cooling with AC units to keep the UPS room cool to avoid overheating, but after the completion of Contractor's work this shall become the obligation of Zayo.

    ☒ Furnish and install 1 hour rated drywall partition to deck in (install drywall from the floor to the deck) the main data center corridor.

    ☒ Relocate sprinkler heads near the CRAC units to avoid interference with return ducting.

☒ Provide storm drains and bollards in the exterior mechanical yard.

☒ Commission and start up the batteries for the Symmetra MW UPS's.

☒ Supply and install three (3) UPS batteries

☒ Furnish and install a new pipe and wire from the E&F distributions panels to the Maintenance Bypass (MBB) Panel.

☒ Control modifications to the newly installed CDP-Output Boards.

☒ Provide Eaton technical support to temporarily convert the existing 1100kva UPS modules to 825kva UPS modules and to address any UPS/UPM repair issues.

☒ Furnish and install conduit and wire for BMS.

☒ Furnish and install lighting in UPS and power rooms.

☒ Modify the existing corridor to accommodate the layout for the Phase 3 expansion layout.

☒ Furnish and install a 10hp VFD for the air conditioning unit.

☒ Furnish and install a 3,000A unfused disconnect for the GD-1 modifications.

☒ Complete the following items of the existing change order punch list:
  o GD-1 / 3,000A unfused disconnect / modifications;
  o GE Kirk key removals;
  o P1 / P2 BMS tie-in for switchgear;
  o UPS ductwork modifications, as set forth by previous punch list;
  o Gas line relocations in power room;
  o Final paint.

☒ Complete all other work as set forth in the following change orders, which are attached hereto as Attachment 2:
  o CO# 006 R1 (4/25/14): Applicable sales tax on remaining base scope;
  o CO# 007 (5/9/14): Service repairs on existing RTU units
  o CO# 008 (5/12/14): New fire dampers
  o CO# 015 (7/7/14): Phase 1 change orders #006, #009, #010, and #011
  o CO# 017 R2 (7/14/14): Storage corridor modifications
  o CO# 017 (7/16/14): Replace exterior data center glass door exit; install door contact for alarming.
  o CO# 020 (7/22/14): Fix to roof leaks

C. Uncompleted remaining "Base Contract" Scope of Work – Contractor Responsibility.

☒ Furnish and install cameras and card readers as depicted on the security drawings.

☒ Landscaping and curbs scope per drawings still needs to be completed.

☒ Deliver all material to site and complete final installation of Covrit Screen wall and associated components. Any additional posts and angle as needed is included.

☒ Furnish and install steel doors for generator yard; these door get exterior card readers, and the roll down doors will need to be monitored by the security system.

☒ Complete all street lighting and exterior lighting as per the drawings.

☒ Cut in, furnish and install exterior door at Fire Sprinkler room and install card reader for access. Fire Department key lock will also need to be installed at outside of this door.

☒ Complete drywall at Fire Sprinkler room; tape, spackle, paint.

☒ Patch asphalt in back parking area and dispose of any/all debris.

☒ Breaker Primary Injection Testing has been performed. Report must be provided to Zayo.

☒ Furnish and install Corridor Lighting, Exit Signs, and Metal Ceilings.

☒ Furnish and install Steel for Power room conduit support; IL Licensed Structural Engineering drawings and calculations must be provided.

☒ Complete installation of Air Handling Unit Louver, duct-work, Start-up, and Commission the unit.

☒ Insulation repairs on mechanical piping throughout the facility.

☒ Concrete Aprons for roll down doors and concrete walk-way along the chiller path into the single door that lead into the building.

☒ Unit heaters not yet installed in future Phase 3 open space.

☒ Re-painting and touch-ups of hallways and other necessary areas.

☒ Obtain letter(s) of completion from the Village of Mt. Prospect (the "City") evidencing the City's required sign-off on all underlying permits for Phase 1 and Phase 2 of the Project.


D. <u>Chiller System – Contractor Responsibility</u>

☒ Submit a claim to its insurer, without waiving or releasing any insurer subrogation rights, for damage to the chiller system that currently exists.

☒ Provide and fund a mutually acceptable vendor to repair and/or control and oversee the repair of the chiller system to its intended operating condition, which repair(s) and subsequent third party warranty shall be subject to Zayo's prior reasonable approval, which shall not be unreasonably withheld.

☒ Fund the repair of the chiller system in the event that Contractor's insurer denies any or all of the insurance claim.

☒ Upon completion of chiller system repairs, re-commission the mechanical systems to ensure proper operation / functionality as evidenced by the establishment of a third party warranty.

☒ Provide and/or fund temporary chiller unit(s) as necessary during any and all repairs to the primary/permanent chiller system(s).

Completion of all Contractor Responsibilities set forth by this section shall fully resolve and release all claims or potential claims between Contractor and Zayo regarding the damages to the chiller system.

## D. Other Contractor Responsibilities

☒ Shipping to the site is included.

☒ Overtime as required is included.

☒ 1 year warranty for materials and labor are included.

☒ Provide customer training on all new equipment inclusive of the chillers as training has yet to be provided since the Chiller incident occurred.

☒ Contractor is responsible for providing key management personnel for progress reporting purposes on a daily basis back to Company. Daily conference calls/meetings will take place and Contractor is responsible for being present at every meeting to report progress.

☒ Contractor is liable for any loss, theft, damage to materials or equipment while in Contractor's possession and Contractor attests to maintaining adequate insurance coverage to accommodate replacement value should loss, theft, or damage occur.

☒ Contractor is responsible for providing final as-builts within twenty (20) days of completion of construction.

☒ Contractor is responsible for increasing the design/construction personnel if required to keep up with the Schedule, including all costs/wages associated with such action.

**Contractor Representative:**    **Oliver Papraniku**

**Company Project Manager:**    **Tony Qorri**

DocuSign Envelope ID: 189AFF11-12E9-44B9-998F-F93D529838DB

## II. Schedule:

The Services began on August 28, 2014 and shall be completed no later than April 1, 2015 ("Due Date"), with the exception of repairs to the chiller system(s) which shall be completed by May 1, 2015 ("Chiller Due Date")

**A. Late Deliveries:** Should Contractor fail to deliver Project by the Due Date or fail to complete repairs to the chiller system(s) by the Chiller Due Date, Contractor shall be liable to Company for a discount of one percent (1%) per day, up to one thousand dollars ($1,000) per day, for each calendar day of delay beyond the Due Date, which Company may set off against any amounts payable to Contractor.

**B. Excusable Delays:** Contractor shall not be liable for delays defined as Excusable Delays per Section 12 of the Agreement or delays caused by permitting agencies or municipal authorities who fail to act upon the requests of Contractor in a timely manner provided Contractor has delivered all appropriate documentation required of the agency expeditiously.

**C. Step-In Rights:** Should Contractor fail to deliver the Project by the Due Date or fail to complete repairs to the chiller system(s) by the Chiller Due Date, Company may, at its option and without prejudice to any other rights or remedies Company may have, hold in abeyance further payments to Contractor and/or terminate this PSA and/or step-in to complete the Services, including taking possession of the Project and any or all completed designs or other work product and finish the Services by whatever method Company deems expedient ("Step-In Rights").

## III. Contract Price: $795,689.00

This is a fixed price contract for the Contractor to complete all work outlined herein with the understanding that any additional costs above the Contract Price, which may be necessary to complete the Scope of Work are the liability of the Contractor. Unforeseen conditions shall not be cause for changes unless explicitly by subsequent amendment to this First Amended PSA No.2.

## IV. Resolution of Mechanic's Liens

Contractor and the Company agree to cooperate and coordinate to resolve any and all mechanic's liens noticed, filed, and/or recorded against the Project in a manner consistent with each Party's obligations under Illinois law and/or the Agreement as modified by PSA No. 2-A. Specifically, Contractor will direct its counsel to assist the Company and its counsel in the defense of any such mechanic's liens. Contractor does not indemnify the Company for any mechanic's liens. The Parties agree that each shall be liable for its own legal fees related to resolution of any mechanic's liens.

## V. Payment Schedule/Invoice Acceptance:

Company agrees to pay $235,000.00 to Contractor upon the Effective Date of this PSA No. 2-A. The Company agrees to provide signature within five days of Contractor's signature.

DocuSign Envelope ID: 189AFF11-12E9-44B9-998F-E93D529838DB

Thereafter, with regard to the remaining $560,689.00, on a monthly basis, Contractor shall submit a single invoice to Company for the work completed that has been accepted by Company during the previous month pursuant to the Delivery Milestones and associated milestone requirements set forth below. Acceptance will only be granted upon completion of all tasks as outlined hereunder.

Upon acceptance from Company that construction is complete, Contractor may invoice for the value or completed portion thereof, **minus ten percent (10%) retainage**. For example, as Contractor documents to Company the completion of portions of the Scope of Work hereunder, Contractor may invoice for the value of the completed portion, minus ten percent (10%) retainage. The final ten percent (10%) retainage may be billed upon completion and acceptance from Company for the following items: final as-builts, site walk through, Contractor completion of punch list items, provision of all subcontractor and subcontractor and/or vendor lien releases, etc.

## A. Delivery Milestones

a. <u>Construction Complete</u>- shall be considered complete upon completion of the following:

☒ All scope of work as contemplated by the Agreement has been completed pursuant to the terms of the Agreement.
☒ All systems have been fully started up and commissioned with a final commissioning document provided and signed off.
☒ All punch list items per Exhibit A have been completed.
☒ Village of Mt. Prospect has issued letter of completion related to any necessary permits related to both Phases 1 and 2.

b. <u>Closeout Complete</u>

☒ Final as-builts, inspections, warranties and other applicable closeout information to properly document project completion and turn over to Company.

## B. Invoice Requirements

All invoices must clearly identify the specific site where the work was completed as well as reference appropriate purchase order line items.
The following backup information is to be provided with each invoice prior to acceptance by Company:

a. Milestone invoice:
  i.   Sign off/acceptance for completion of milestone by Company Project Manager or inspector.
  ii.  Documentation per above definitions of milestones.

b. Final invoice (at Closeout Complete):
  i.   Final as-built drawing.
  ii.  Notice of completion approval from applicable permit/ROW agency.

DocuSign Envelope ID: 189AFF11-12E9-44B9-998F-E93D529838DB

      iii.    Final check list signed/approved by both Contractor and Company representative and/or inspector.

      iv.    Subcontractor and Contractor lien waivers in the same form and content as Attachment 1 unless otherwise required by local law.

c. All invoices shall:

      i.    Include work applicable to this PSA only.

      ii.    Include an invoice date equal to the date the invoice is submitted to Company (the "Invoice Date").

Should an invoice not meet any of these requirements, including work invoiced without accepted contractual deliverables, Company reserves the right to reject an invoice and not acknowledge it as received by Company until Contractor rectifies the omission(s).

Upon Company's confirmation that all missing items have been received, Contractor shall modify the Invoice Date to reflect the date Company acknowledges that all errors have been corrected.

Should any invoice be received in excess of the Contract Price, the invoice will be rejected and not acknowledged as received by Company.

## C. Invoice Submission

Each invoice shall include only work applicable to this PSA No. 2-A. Invoices shall reference Company purchase order number to ensure timely payment. Invoices are to be sent to the attention of Accounts Payables at 400 Centennial Parkway Suite 200, Louisville, Colorado 80027 (ZayoAP@zayo.com and tony.qorri@zayo.com if sending electronically).

The parties agree that all terms and conditions of the original Agreement remain unchanged except as hereby modified.

_____

Oliver Papraniku

_____

Greg Friedman

DocuSign Envelope ID: 189AFF11-12E9-44B9-998F-E93D529838DB

## Exhibit A

### Punchlist Tasks

- Gas pipe relocation from old power room to loading dock area, and removed out of new power room

- BMS panel powered off UPS in old power room and mechanical room

- Outlet move behind water pipe in power room 2

- Generator enclosures cleaned out and engines wiped down; lots of mud/dust

- All card readers installed on all doors and all door hardware completed including auto closures and saddles

- Remove door from hallway to make all continues towards end of two weeks.

- Insulation on chilled water pipe from hallway to power room, need to cut out stud and relocate outlet piping for insulation to be done properly.

- Clean filters on UPS's units, Dust out all battery cabinets on all UPS systems

- Camera locations and wire clean up through out. Expecting all cameras up and running and focused.

- Chiller pipes need to be insulated in between chillers. Sweating badly

- MTS's on all CRAC units installed

- Old power room lights installed.

- Mechanical room lights installed

- AHU in mechanical room turned up and commissioned

- Outside air duct installed to AHU once block/brink walls are up

- Mechanical room cleaned up, painted and all equipment wiped down

- All ISSI doors/security system components installed and on line

- Ceiling grid installed in entire hallway, spaced from the wall on all sides with possible BurgerFI ceiling if City/Fire Department approves.

- All base installed throughout as still have black base on walls even though the walls have already been painted(old power room)

DocuSign Envelope ID: 189AFF11-12E9-44B9-998F-F93D529838DB

- Floors in old power room and new power room final painting after everyone is out and all contractors have moved their materials and tools to outside trailers so we are ready to start phase 3.

- Goal is to stop tracking dust into cleaned areas, but until the future power room and future data center are cleaned out, it will not happen.

- Check raised floor grounding where wall partition came down as peds were still laying there and ground was never connected.

## Exhibit B

### Mechanics Liens Noticed and/or Recorded against the Project

| Lien Claimant | Amount | Amount Disputed by OPI | Amount Related to Lien to be Paid by OPI by 1/31/15 | Amount Unrelated to Lien to be Paid by OPI by 1/31/15 | Partial Lien Waiver Amount | Final Lien Waiver Amount |
|---|---|---|---|---|---|---|
| Columbia Pipe & Supply | $92,783.89 | Entire lien disputed | $0 | | | |
| Sunrise Electrical | $304,089.64 | Entire lien disputed | $0 | | | |
| Advance Electrical | $69,075.28 | Entire lien disputed | $0 | | | |
| Burris Equipment Co. | $8,261.00 | $0 | $8,261.00 (Paid) | | | $8,261.00 (expected) |
| New York Electric | $766,600.47 | Entire lien disputed | $0 | $28,882.67 | $167,905 | $1,250,000 |
| Talaga Sheet Metal Inc. | $201,978.00 | Entire lien disputed | $0 | $35,000.00[1] | $50,000 | |
| Parkside Insulation, Inc | $47,323.00 | Entire lien disputed while work ongoing | $0[2] | | | |
| Nova Fire Protection | $47,467.13 | $0 | $47,467.13 | | | $47,467.13 (expected) |
| Industrial Electric Manufacturing | $351,721.00 | $121,721.00 | $230,000.00 | | | |
| **Total Remaining** | **$1,889,299.30** | **$1,603,571.20** | **$285,728.13** | **$63,882.67** | | |

---

[1] This amount is an estimate, but OPI will pay Talaga Sheet Metal the portion of the Contract Price that reflects the rental equipment provided by Talaga Sheet Metal. OPI disputes that Talaga Sheet Metal is entitled to the amount of its remaining claim.

[2] Work is ongoing. Final sum to be paid by OPI to obtain full and final lien waiver will be negotiated once work is complete.

# EXHIBIT 6

**FIRST AMENDMENT TO THE AMENDMED PROJECT SERVICE AGREEMENT #2A**

This First Amendment ("Amendment") is made July 27, 2015 by and between Zayo Group, LLC ("Company") and Ocean Pacific Interiors, Inc. ("Contractor") amending the Amended Project Service Agreement #2A ("PSA #2A"). Any amendments herein are annexed to and made a part of PSA #2A. In each instance in which the provisions of this Amendment contradict or are inconsistent with the provisions of PSA #2, the provisions of this Amendment shall prevail and govern, and the contradicted, superseded or inconsistent provisions shall be deemed amended accordingly. Company and Contractor wish to make the following amendments to PSA #2A:

1. **Section I. Scope of Work** shall be amended to include the following:
   - "Backfill, compact and grade area around the mechanical yard as needed for repairs.
   - Reset any and all unstable steel supports for the screen wall installation.
   - All travel and labor necessary to job-site."

2. The Due Date in **Section II. Schedule** is hereby deleted and replaced with a Due Date of August 17, 2015.

3. The Contract Price in **Section III. Contract Price** is hereby deleted and replaced with a new Contract Price of **$829,079.00.**

Except as set forth herein, all other terms and conditions of PSA #2A shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have duly executed this Addendum as of the day and year first above written.

Zayo Group, LLC                          CONTRACTOR

By: *Gregg Strumberger*                  By: *Oliver Papraniku*
    B3B0C76CF63E4A8...                       1B5BB074DE8E473...

Name: Gregg Strumberger                  Name: Oliver Papraniku

Title: General Counsel, ZPI              Title: President

Date: 7/30/2015                          Date: 7/29/2015

# EXHIBIT 7



February 23, 2016

VIA FEDEX OVERNIGHT AND EMAIL: KRasp@ohaganlaw.com
Kevin Rasp
O'Hagan, LLC
One East Wacker Drive, Suite 3400
Chicago, IL 60601

Re: Ocean Pacific Interiors, Inc. ("OPI")/ <b><i>Demand for Payment</i></b>

Dear Mr. Rasp,

As you are aware, the chillers at 800 Business Center Drive in Mt. Prospect, Illinois ("Project") were damaged by your client, OPI, which necessitated extensive repairs and re-installation. Per the Parties agreement, OPI is obligated to "[f]und the repair of the chiller system in the event the Contractor's insurer denies any or all of the insurance claim." PSA2 § D, page 5.

Last year, Zayo submitted a claim to OPI's insurance carrier related to these damages. OPI's carrier initially denied the claim. Zayo understands OPI has appealed this decision and is still awaiting a response. After the claim was denied, Zayo demanded full payment of the chiller repair costs from OPI pursuant PSA2 § D, page 5, *supra*. OPI refused, and instead demanded Zayo itself tender the claim to its own carrier while OPI's insurance claim was pending appeal. Zayo did so, and that claim was denied by letter dated February 16, 2016, attached.

As a result of the foregoing, please accept this letter as Zayo's final demand for payment to OPI for the costs Zayo incurred related to the chiller damages. An accounting of these costs are described in Attachment 1. (*See also* OPI's acknowledgement letter regarding Zayo's payment of some of these costs, dated April 23, 2015, attached.) <b><u>Payment in full must be received within 30 days of the date of this letter and no later than Thursday March 24, 2016</u></b>. Checks can be made out to Zayo Group, LLC and sent to my attention at the information below. If you would prefer wire instructions, please contact me directly.

Sincerely,

Abbi Dayton
Sr. Corporate Counsel

cc: Adam Toosley, Dan Yamigishi, Denean Sturino

**TRAVELERS**↻

The Travelers Indemnity Company
P.O. Box 3204
Naperville, IL 60566-7204

02/16/2016

**Abigail M. Dayton**
**Zayo Group, LLC**
**1805 28th Street**
**Boulder CO 80301**

| | |
|---|---|
| **Insured:** | Zayo Group, LLC |
| **Claim Number:** | E2P8778 |
| **Policy Number:** | HEK630 -9B867518 |
| **Date of Loss:** | 10/30/2014 |
| **Loss Location:** | 800 Business Center Chicago IL |

Dear Ms. Dayton,

Zayo Group, LLC or one of its affiliated entities has made claim under its insurance policy issued by The Travelers Indemnity Company ("Travelers") for the cost to repair frozen cooling coils in two chillers at the captioned location. After a careful review of the insurance policy and an extensive investigation into the circumstances surrounding the loss, we have determined that the loss is not covered by the policy of insurance. Below is a summary of how the insurance coverage applies to this loss.

Travelers issued policy no. HEK630 -9B867518 to Zayo Group, LLC, effective from August 1, 2014 to August 1, 2015, and insuring, among other things, the interest of Zayo Group, LLC and the other named insureds identified therein in the business personal property located at 800 Business Center, Chicago IL, subject to all of the terms, conditions, exclusions and limitations contained therein (the "Policy"). We note that the named insureds identified in the Policy do not include Zayo Colocation, LLC, the only entity which appears to have an interest in the chillers.

Zayo Colocation, LLC contracted with Ocean Pacific Interiors, Inc. ("OP") for the demolition and buildout of the loss location premises. The buildout by OP included the installation of two Arctic Cool chillers on the roof of the premises. The chillers were purchased on or before March 13, 2014 by OP for Zayo Colocation, LLC at a cost of $783,000. OP billed Zayo Colocation, LLC for the chillers on or before March 21, 2014. The chillers were installed by OP or one of OP's subcontractors and first used by Zayo Colocation, LLC on July 10, 2014. On or about November 12, 2014, Zayo Colocation, LLC experienced problems with the chillers, and they eventually became inoperable.

On behalf of Zayo Colocation, LLC, Michael Rayborn of Advance Mechanical Systems inspected the chillers and determined that their free cooling coils froze and split because there was no glycol in the free cooling coils. Glycol must be added to the water in the cooling system to prevent freezing. OP admitted to Zayo Colocation, LLC that OP was supposed to put glycol in the chillers but that OP did not do so. In fact, in January 2015, OP and Zayo Colocation, LLC executed their First Amended Project Service Agreement in which OP took responsibility for the repair of the chillers:

D. Chiller System - Contractor [OP] Responsibility

Submit a claim to its insurer, without waiving or releasing any insurer subrogation rights, for damage to the chiller system that currently exists.

FREEFORM

Provide and fund a mutually acceptable vendor to repair and/or control and oversee the repair of the chiller system to its intended operating condition, which repair(s) and subsequent third party warranty shall be subject to Zayo's prior reasonable approval, which shall not be unreasonably withheld.

Fund the repair of the chiller system in the event that Contractor's insurer denies any or all of the insurance claim.

Upon completion of chiller system repairs, re-commission the mechanical systems to ensure proper operation/functionality as evidenced by the establishment of a third party warranty.

Provide and/or fund temporary chiller unit(s) as necessary during any and all repairs to the primary/permanent chiller system(s).

Completion of all Contractor Responsibilities set forth by this section shall fully resolve and release all claims or potential claims between Contractor and Zayo regarding the damages to the chiller system.

However, Zayo Colocation, LLC has advised that OP did not honor its commitments even though its insurer denied its insurance claim. Thereafter, on April 30, 2015, Zayo Colocation, LLC made a claim under the Policy.

The Policy contains an exclusion for faulty, inadequate, or defective workmanship and maintenance:

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c., but if an excluded cause of loss that is listed in 3.a. and 3.b. below results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

* * *

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling;
(4) Maintenance;

Of part or all of any property on or off the described premises.

If an excluded cause of loss that is listed in 3.c. above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for:

(1) Any cost of:

(a) Correcting or making good the fault, inadequacy or defect itself;
(b) Tearing down, tearing out, repairing or replacing any part of any property to correct the fault, inadequacy or defect;

except as specifically provided under the Water or Other Substance Loss -- Tear Out and Replacement Expense Additional Coverage; or

(2) Any resulting loss or damage by a Covered Cause of Loss to the property that

has the fault, inadequacy or defect until the fault inadequacy or defect is corrected.

The foregoing facts establish that the damage to the cooling coils was caused by or resulted from faulty, inadequate or defective workmanship and maintenance based on the failure to put glycol into the chillers' cooling coils. The foregoing provision excludes such loss and damage from coverage, and it also excludes any cost of correcting or making good the fault, inadequacy or defect itself or any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect. The loss and damage is therefore not covered by the Policy.

Our reference to specific provisions of the Policy, and specific reasons for denying coverage, does not prevent us from asserting any other term, condition, or provision of the Policy, or any other basis upon which to deny the claim, including but not limited to the basis that Zayo Colocation, LLC has no rights under the Policy. Please note that we are not waiving any requirements of the contract of insurance and nothing in this letter should be construed as a waiver of any of the conditions or requirements of the Policy.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Should you have any questions, please feel free to call me.


Sincerely,


Patrick Koerner
Claim Professional
Direct: (630)961-8808
Office: (800)842-6172 Ext. 961-8808
Fax: (877)795-9975
Email: PKOERNER@travelers.com



CC: Willis Of Colorado Inc

**ATTACHMENT 1**

| Vendor | Description | Amount |
|---|---|---|
| Advance Mechanical | Consolidated Service Invoices | $ 24,178.00 |
| Advance Mechanical | Chiller Commissioning (Mechanical Contractor Support) | $ 1,988.00 |
| Boon Energy | BMS Disconnect/Reconnect & Commissioning | $ 14,500.00 |
| MWSK | Chiller #1 Repair (Chiller Manufacturer) | $ 157,000.00 |
| MWSK | Chiller #2 Repair (Chiller Manufacturer) | $ 157,000.00 |
| MWSK | Retention (Chiller Manufacturer) | $ 36,000.00 |
| NYE | Power to temporary chiller (Electrician) | $ 6,963.00 |
| NYE | Power for temporary cooling (Electrician) | $ 3,023.00 |
| NYE | Chiller Disconnect/Reconnect (Electrician) | $ 18,400.00 |
| NYE | Chiller Commissioning (Electrical Contractor Support) | $ 1,784.00 |
| NYE | Removal of Temp Electric and Patching Holes (Electrician) | $ 7,300.00 |
| BlueChip | Re-Commission Mechanical Systems after Chiller Repairs (Commissioning Agent) | $ 15,465.00 |
| Westside | Change order #1 | $ 2,572.00 |
| Westside | Chiller #1 in and Chiller #2 out | $ 49,600.00 |
| Westside | Chiller #1 out | $ 17,800.00 |
| Westside | Temp Chiller April | $ 13,000.00 |
| Westside | Temp Chiller May-June | $ 20,892.00 |
| Westside | Temp Chiller up to March | $ 50,508.00 |
| Westside | Temp Chiller June-July | $ 13,000.00 |
| Westside | Temp Chiller July-August | $ 13,000.00 |
| | Total | $ 623,973.00 |



April 23, 2015

VIA EMAIL ONLY: oliver@opassociates.com
Oliver Papraniku
Ocean Pacific Interiors, Inc.
7 Hanover Square 8th Floor
New York, NY 10004

## ACKNOWLEDGEMENT OF PAYMENT

Dear Mr. Papraniku,

As you know, the chillers at 800 Business Center Drive in Mt. Prospect, Illinois ("Project") have been damaged and are in the process of being repaired and reinstalled. In an effort to repair these damages, Zayo Colocation, LLC ("zColo") will make payments to the contractors listed in the amounts below:

Advanced Mechanical Systems, Inc.     $14,605.00
MWSK                                                       $157,500.00[1]

The undersigned Ocean Pacific Interiors, Inc. ("OPI") hereby acknowledges that the above amounts are accurate and correct. OPI further acknowledges that a claim has been submitted to its insurer related to this damage and that it has contractual obligations described fully by the PSA No.2-A between the parties dated January 15, 2015. This Acknowledgement does not modify the existing contractual obligations related to the Project.

Sincerely,

Abbi Dayton
Corporate Counsel

## Signed and Acknowledged By:

Oliver Papraniku on behalf of Ocean Pacific Interiors, Inc.

4/23/15
Date

cc:     Adam Toosley, Tony Qorri, Kevin Rasp

---

[1] Representing 40% of $350,000 due upon delivery of the first chiller. The remaining 40% ($157,500.00) is due upon delivery of the second chiller and 10% ($35,000.00) upon system re-commissioning.

# EXHIBIT 8



# Freeborn

FREEBORN & PETERS LLP

**ADAM C. TOOSLEY**
Partner

**Freeborn & Peters LLP**
*Attorneys at Law*
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

(312) 360-6789 direct
(312) 360-6520 fax

atoosley@freeborn.com

**www.freeborn.com**

February 19, 2016

<u>**Via E-Mail (krasp@ohaganlaw.com)**</u>

Kevin C. Rasp
O'HAGAN, LLC
One East Wacker Drive
Suite 3400
Chicago, Illinois 60601

Dear Kevin:

      As you know, my office represents Zayo Group, LLC ("Zayo") as it pertains to construction on the property located 800 East Business Dr., Mount Prospect, IL 60056 (the "Mt. Prospect Project"). Zayo and Ocean Pacific Interiors, Inc. ("OPI") entered into various agreements for the Mt. Prospect Project, including a Construction Management Services Agreement on November 1, 2013. Thereafter, on or about February 13, 2014, Zayo and OPI later into a Project Services Agreement for Phase Two of the Mt. Prospect Project which included a completion date of July 1, 2014. The Construction Management Services Agreement was amended and superseded by a Master Services Agreement entered into between the parties in July of 2014. The new Master Services Agreement included a liquidated damages provision of $1,000/day for each day that the Mt. Prospect Project was not completed on time. Shortly after the new Master Services Agreement was executed, Zayo and OPI entered into a new Project Services Agreement ("PSA #2") in September of 2014. PSA #2 had a similar $1,000/day liquidated damages clause and by way of the amendments to same, states that the mandatory completion date for Phase II of the Mt. Prospect Project was to be August 17, 2015.

      As of the date of this letter, Phase II of the Mt. Prospect Project is still not completed, and more specifically, the following tasks still need to be completed by OPI:

- Finishing of the screen wall and steel install in mechanical yard;

- Installing cap on break wall in mechanical yard;

- Finishing steel install in power room;

- Finishing installation of controls for roll up door and setting the level on them;

- Finish installing sprinkler room door and data center door;

- Finish installing door access cards and cameras;



FREEBORN & PETERS LLP

Kevin C. Rasp
February 19, 2016
Page 2

- Hallway lighting needs to be installed;

- Delivery and installation of the ramp for data center needs to be completed;

- Final painting needs to be done;

- The dry wall for the sprinkler room needs to be painted;

- There is an issue with the breaker as shown in the primary injection testing report and this needs to be resolved; and

- Permits for phase I & phase II need to be signed off on.

Although your client is scheduled to complete some of these tasks in the next few weeks, the mandatory completion date has not been met by OPI. As such, Zayo is asserting its rights to liquidated damages in the sum of $1,000/day. As of today, the amount of liquidated damages is $187,000.00 representing the 187 days between the mandatory completion date and today's date. Zayo demands that OPI pay that sum to Zayo within the next thirty (30) days and to finish all of the tasks identified in the list above, or that amount will be withheld from the funds still due and owing for OPI to finish the Mt. Prospect Project. Zayo also reserves its rights to continue to charge OPI the $1,000.00/day for each day until the above-referenced tasks are completed.

Very truly yours,

Adam C. Toosley

ACT

3538659v1/30086-0002

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that on the date shown below he caused the

foregoing document to be filed electronically in the United States District Court for the Northern

District of Illinois via the Court's electronic filing system, which will send an electronic notice

and a copy of the document to all counsel of record.

Dated: November 1, 2017 /s/ Adam C. Toosley

*Attorney for Plaintiff/Counter-Defendant, Zayo Group, LLC*