UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZAYO GROUP, LLC,

                    Plaintiff,

      v.

OCEAN PACIFIC INTERIORS, INC.,

                    Defendant

Case No. 16-cv-7808

----------------------------------------------------

OCEAN PACIFIC INTERIORS, INC.

                    Counter-Plaintiff

      v.

ZAYO GROUP, LLC.

                    Counter-Defendant.

DEFENDANT AND COUNTER-PLAINTIFF OCEAN PACIFIC INTERIORS, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT
AND COUNTERCLAIM FOR QUANTUM MERUIT AND BREACH OF CONTRACT

Defendant, OCEAN PACIFIC INTERIORS, INC. ("OPI"), by its attorneys, LEWIS BRISBOIS

BISGAARD & SMITH LLP, for its Answer to Plaintiff's Amended Complaint for Fraudulent

Inducement and Breach of Contract, and Counterclaim for Quantum Meruit and Breach of Contract

states as follows:

PARTIES

      1.      Zayo is a Delaware limited liability company with its principal place of business in

Colorado.

      ANSWER:      OPI lacks information sufficient to admit or deny this allegation, and therefore

denies the allegations of this paragraph and demands proof thereof.

2.       Zayo Group Holdings, Inc. is a Delaware corporation based in Colorado, and is the sole member of Zayo.

<u>ANSWER</u>:       OPI lacks information sufficient to admit or deny this allegation, and therefore denies the allegations of this paragraph and demands proof thereof.

3.       Ocean Pacific Interiors, Inc. ("OPI") is a New York corporation with its principal place of business located in New York.

<u>ANSWER</u>:       Admitted.

## SUBJECT MATTER JURISDICTION AND VENUE

4.       The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) based upon complete diversity of the parties and a minimum amount in controversy in excess of $75,000.00, exclusive of interest and costs.

<u>ANSWER</u>:       This paragraph alleges legal conclusions to which no answer is required.  To the extent that an answer is required, OPI denies the allegations of this paragraph.

5.       Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(1) because the construction project at issue in this case was located in the State of Illinois and under the Illinois Building and Construction Contract Act, any venue provision in the documents at issue that requires suits to be filed outside of Illinois is not enforceable.

<u>ANSWER</u>:       OPI admits that the construction project in this case is located in the State of Illinois.  Answering further, this paragraph alleges legal conclusions to which no answer is required. To the extent that an answer is required, OPI denies the legal conclusions of this paragraph.

<u>BACKGROUND FACTS</u>

<u>General Allegations</u>

6.     Pursuant to a written lease, Zayo is the tenant on the property located at 800 East Business Dr., Mount Prospect, IL 60056 (the "Property").

<u>ANSWER:</u>     OPI lacks information sufficient to admit or deny this allegation, and therefore denies the allegations of this paragraph and demands proof thereof.

7.     In 2013, Zayo decided to build a colocation center on the Property, and the colocation center construction was to be performed in phases (the "Project").

<u>ANSWER:</u>     OPI lacks information sufficient to admit or deny allegations related to how or when Zayo "decided" to build a colocation center, admits that the Project construction occurred in phases, and denies the remaining allegations of this paragraph.

8.     On July 10, 2014, Zayo and OPI entered into a Master Services Agreement ("MSA") pertaining to work to be performed for Zayo and by OPI on various projects, including the various phases of the Project.  A true and correct copy of the MSA is attached hereto as Exhibit "1."

<u>ANSWER:</u>     OPI denies the allegations of this paragraph, and specifically denies that the alleged MSA pertains to work on the Project.  OPI further denies that Exhibit "1" is a true and correct copy of a fully-executed, enforceable MSA.

**Phase Two of the Project**

9.     On or about February 13, 2014, Zayo and OPI entered into "Exhibit A" to the CMSA for Phase Two of the Project, which outlined OPI's scope of work for that phase, and was for the total sum of $8,173,054,00 to be paid by Zayo to OPI.  A true and correct copy of this Exhibit A document is attached hereto as Exhibit "2."

ANSWER: OPI admits that "Exhibit A" states its initial scope of work for the Project, denies that the scope of work is fully and accurately set forth in this paragraph, admits that Exhibit "2" is a true and accurate copy. OPI denies the total project sum alleged, and denies all remaining allegations of this paragraph.

10.     As for Phase Two, in addition to the contract sum of $8,173,054.00, there were three additional purchase orders for expanded scope of work entered into on the Project, in the amounts of $15,500.00, $421,946.00 and $550,000.00. True and correct copies of these purchase orders are attached hereto as Group Exhibit "3."

ANSWER: OPI admits the existence of additional purchase orders, denies that the purchase orders were for the sums alleged, and denies all remaining allegations of this paragraph.

11.     Over the course of Phase Two of the Project, Zayo paid OPI the full contract sum of $8,173,054.00, and the last payment was made on July 16, 2014. All of the payments were made in exchange for a release of mechanic's lien provided by OPI.

ANSWER: OPI admits that it received payment of the amount alleged over the course of Phase 2, denies that such payments were made in exchange for the release of mechanic's lien, and denies all other allegations of this paragraph.

12.     The payments for the three purchase orders for Phase Two of the Project were made in the summer of 2014, and were also made in exchange for partial lien releases from OPI.

ANSWER: OPI admits that it received payment for certain change orders over the course of Phase 2, denies that such payments were made in exchange for the release of mechanic's lien, and denies all other allegations of this paragraph.

13.     After Zayo received an invoice for OPI's services on the Project, and after OPI received payment from Zayo of that invoice, OPI provided Zayo with a partial lien for each payment made.

ANSWER:     OPI denies the allegations in this paragraph.

14.     The total amount of partial lien releases Zayo received from OPI equaled the amount Zayo owed under the parties' agreements on the Project.

ANSWER:     OPI denies the allegations in this paragraph.

15.     Zayo satisfied its contractual obligations and received a full and complete release of lien, which was achieved over a total of six (6) partial lien waivers received from OPI.

ANSWER:     OPI denies the allegations in this paragraph.

16.     For example, on or about July 16, 2014, OPI provided a Release of Lien, identifying that it was owed $0.00 for its work on Phase Two of the Project after payment of $388,989.81. The July 16, 2014 Release of Lien provided:

> In consideration of receiving a payment from Zayo Group LLC in the amount of $388,989.81, Ocean Pacific Interiors Inc., and its corporate parents, affiliates, subsidiaries, employees, agents, subcontractors, materialmen, successors and assigns (collectively, the "Claimant") hereby agrees and acknowledges it has received partial payment for all work, services, materials and equipment provided to the construction project located at 800 Business Drive, Mt Prospect, IL 60056 (the "Project") due and owing as of this date. To that end, Claimant, as of this date, releases and discharges any claims, rights and/or judgments it has, or may have against, Zayo Group LLC, the owner of the real property located at 800 Business Drive, Mt Prospect, IL 60056 (the "Owner") relative to the Project. **The Claimant represents and warrants that it has paid in full and has otherwise fully satisfied all of its obligations for all work, services, materials and equipment furnished and labor supplied by or on behalf of the Claimant on the Project.**
>
> Claimant sells, assigns and transfers to Zayo Group LLC, its successors or assigns, all of the Claimant's rights, title and interest to any claim, right, judgment or recovery relative to the Property and/or the Project that it has had, or may have as of this date, including Claimant's right to file and discharge mechanic liens. Claimant hereby appoints Zayo Group LLC as its attorney-in-fact for the purposes of discharging any lien Claimant may have filed on the Property. Claimant also agrees to execute such further documents as may be reasonably necessary to effectuate the

assignment and transfer the aforementioned claims to Zayo Group LLC. Claimant represents and warrants it has not filed a mechanic's lien on the Property as of this date, and in the future shall not file a mechanic's lien on the Project for the claims released and discharged herein. **Claimant further represents that, as of this date, all suppliers of labor, equipment, materials, superintendence, or any other service or commodity, whether under direct contractual obligations to the Claimant or not, who have contributed directly or indirectly to the Claimant's fulfillment of its contractual obligations relating to the Project, have been paid in full (or shall be paid in full within seven (7) days) and there are no outstanding claims, demands, fines, or unsettled disputes between the Claimant and any of its subcontractors, materialmen, or suppliers.** In the event that the Claimant hereafter becomes aware of any such claim, demand, or dispute, the Claimant agrees to notify Zayo Group LLC writing within three (3) calendar days **and to immediately discharge or satisfy any such claim, demand, or dispute at the Claimant's sole expense.** Claimant(s) further agrees, upon Zayo Group LLC's request, to immediately provide Zayo Group LLC or its designee with such further releases, and releases of liens, and any other requisite instruments from itself and its subcontractors and suppliers as Deutsche Bank may require within three (3) days of Zayo Group LLC's written request.

**Claimant agrees to indemnify, protect, defend and hold Zayo Group LLC harmless from and against all losses, damages, expenses or liabilities of every kind whatsoever which arise from or are related to a breach of any term of this agreement, including without limitation, all losses arising from or in connection with all suits, proceedings, claims and/or demands from third parties** and/or all damages, costs, fines and/or penalties of any kind whatsoever by any governmental entity, and any all claims, demands or losses of every kind whatsoever by Zayo Group LLC's surety on this project (if any), which are suffered, incurred, sustained or required to be paid by Zayo Group LLC, including without limitation all legal costs including attorneys' fees and court costs incurred in investigating and defending any of the above. In connection with this defense and indemnity obligation of the Claimant, **Zayo Group LLC, shall have the right, in its sole and absolute discretion and upon notice to the Claimant, to employ separate counsel in any such suit or proceeding and/or to participate in the defense thereof at the Claimant's expense.** Further, to the extent any statement, covenant or representation made by Claimant herein is breached and/or is false, Zayo Group LLC will be entitled to recover all damages resulting therefrom including, but not limited to, all attorneys' fees incurred by Zayo Group LLC. Any and all litigation arising between the Claimant and Zayo Group LLC as a result of, but not limited to, liability, damages, costs, fines, and/or penalties incurred by Zayo Group LLC shall be litigated in New York and subject to New York state law. The undersigned represents and warrants that he or she is duly authorized to execute this document and bind the Claimant to the promises made herein.

A true and correct copy of the July 16, 2014 Release of Lien is attached hereto as Exhibit "4."

ANSWER:    OPI admits that the quoted language, without emphasis, appears in the "Partial Release of Lien Rights and Related Matters Agreement" attached as Exhibit "4," but denies the enforceability of the terms of the agreement, and denies all liability alleged based on this document. Further answering, OPI denies all remaining allegations of this paragraph.

17.    Despite the representations in the July 16, 2014 Release of Lien, as of the time of the final payment for Phase Two from Zayo to OPI, many subcontractors and suppliers of OPI had not been paid by OPI.

ANSWER:    OPI denies the allegations in this paragraph.

18.    To that end, numerous subcontractors and suppliers sent notice and/or recorded mechanic's liens on the Property:  (a) on October 1, 2014, Sunrise Electrical recorded a mechanic's lien For $304,089.64; (b) on October 9, 2014, Advance Electrical recorded a mechanic's lien for $69,078.28; (c) on September 3, 2014, Columbia Pipe & Supply recorded a mechanic's lien for $92,783.89; (d) on November 4, 2014, NY Electric recorded a mechanic's lien for $766,600.47; (e) on December 2, 2014, Talaga Sheet Metal recorded a mechanic's lien for $201,978,00; (f) on December 22, 2014, Parkside Insulation recorded a mechanic's lien for $47,323.00; (g) on January 29, 2015, Chicago Switchboard recorded a mechanic's lien for $21,974.76; (h) on February 6, 2015, Porter Pipe recorded a mechanic's lien for $21,620.47; and (i) on October 16, 2014, Burris Equipment Co. recorded a mechanic's lien for $8,261.00.

ANSWER:    OPI admits the existence of liens, including said amounts, noticed, filed and/or recorded for the named parties only as reflected in the public record only, but denies liability based on said liens, and further denies all other allegations in this paragraph.

19.    On Phase Two of the Project, OPI was also responsible for the installation of two Arctic Cool chillers on the roof of the Property.

ANSWER: OPI denies the allegations in this paragraph.

20. The chillers were purchased by Zayo at a cost of $783,000.00.

ANSWER: OPI admits that Zayo purchased two Artic Cool chillers for installation at the project. OPI denies all remaining allegations in this paragraph.

21. Starting in November of 2014, Zayo noticed issues with the chillers installed by OPI and they eventually became inoperable.

ANSWER: OPI denies the allegations in this paragraph.

22. The chillers experienced problems and became inoperable as a result of OPI, or one of its subcontractors, failing or neglecting to put glycol in the water in the free cooling coils.

ANSWER: OPI denies the allegations in this paragraph.

23. In order to correct OPI's work on the chillers, Zayo was forced to expend the sum of $623,973.00.

ANSWER: OPI denies the allegation in this paragraph.

24. Furthermore, OPI has failed to provide certain documentation for Zayo to close out its permit of Phase 2 and receive a certificate of occupancy from the Village of Mt. Prospect related to the Project.

ANSWER: OPI denies the allegations in this paragraph.

**Phase 2-A of the Project**

25. On or about January 19, 2015, Zayo and OPI entered into an Amended Project Services Agreement which was to cover additional work to be performed by OPI on the Project (the "Phase 2-A Agreement"). A true and correct copy of the Phase 2-A Agreement is attached hereto as Exhibit "5."

ANSWER: OPI admits that it executed the Phase 2-A Agreement but denies the validity and enforceability of the Agreement.

26.     In accordance with the Phase 2-A Agreement, OPI agreed to perform certain punch list and other tasks for the Project.  (Exhibit 5).

ANSWER:     As phrased, OPI denies the allegations in this paragraph.

27.     In accordance with the Phase 2-A Agreement, Zayo agreed to pay to OPI the sum of $795,689.00.  (Exhibit 5).

ANSWER:     OPI admits that Zayo agreed to pay it additional sums for additional work, not within the original scope of the project  OPI denies all other allegations in this paragraph.

28.     As for the Arctic Cool chillers referenced above, the Phase 2-A Agreement provided that OPI was to:

(a)     Submit a claim to its insurer, without waiving or releasing any insurer subrogation rights, for damage to the chiller system that currently exists;

(b)     Provide and fund a mutually acceptable vendor to repair and/or control and oversee the repair of the chiller system to its intended operating condition, which repair(s) and subsequent third party warranty shall be subject to Zayo's prior reasonable approval, which shall not be unreasonably withheld;

(c)     Fund the repair of the chiller system in the event that Contractor's insurer denies any or all of the insurance claim;

(d)     Upon completion of chiller system repairs, re-commission the mechanical systems to ensure proper operation / functionality as evidenced by the establishment of a third party warranty; and

(e)     Provide and/or fund temporary chiller unit(s) as necessary during any and all repairs to the primary/permanent chiller system(s).

ANSWER:     OPI admits only that the language set forth above is stated in said Phase 2-A Agreement but denies the enforceability of said Agreement.

29.     Claims regarding the chiller system were denied by insurers for both Zayo and OPI, but, to date, OPI has failed and refused to reimburse Zayo for the costs associated with the chillers.

ANSWER:     OPI admits that it Zayo submitted a claim to OPI's insurer for the alleged damages to the chiller, and that said claim has been denied.  OPI further admits that it has not

"reimbursed" Zayo any sum for repair of the chillers as it denies that it is required to do so. Further answering, OPI denies all remaining allegations.

30.     In accordance with the Phase 2-A Agreement, OPI agreed to complete the Project by May 1, 2015. (Exhibit 5).

ANSWER:     As phrased, OPI denies the allegations in this paragraph.

31.     The Phase 2-A Agreement was amended by the parties, and the new agreed-upon completion date for the Project was August 17, 2015. A true and correct copy of the Amended First Amendment to Project Service Agreement #2A is attached hereto as Exhibit "6."

ANSWER:     OPI admits that the Phase 2-A Agreement was amended, but denies that it is enforceable and further denies any liability thereunder.

32.     Despite the agreement to finish this Project by August 17, 2015 in accordance with the Phase 2-A Agreement (and its amendments), OPI did not finish its work until May of 2016.

ANSWER:     OPI denies all allegations and conclusions of law in this paragraph.

33.     In accordance with the Phase 2-A Agreement, Zayo is entitled to liquidated damages from OPI of one percent (1%) per day, up to one thousand dollars ($1,000) per day, for each calendar day of delay after August 17, 2015. (Exhibits 5 and 6).

ANSWER:     OPI denies all allegations and conclusion of laws in this paragraph, and specifically denies that the Phase 2-A Agreement, including any claim for liquidated damages, is enforceable.

## COUNT I
## Fraudulent Inducement

34.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 34.

ANSWER:    OPI repeats and reasserts its answers to the allegations contained in paragraphs 1 through 33 as if fully set forth and incorporated herein.

35.    To induce Zayo to make payments to OPI on the Project, OPI provided certain lien waivers to Zayo.

ANSWER:    OPI denies the allegations in this paragraph.

36.    On those lien waivers, OPI made representations, including that "all suppliers of labor, equipment, materials, superintendence, or any other service or commodity, whether under direct contractual obligations to the Claimant or not, who have contributed directly or indirectly to the Claimant's fulfillment of its contractual obligations relating to the Project, have been paid in full (or shall be paid in full within seven (7) days) and there are no outstanding claims, demands, fines, or unsettled disputes between the Claimant and any of its subcontractors, materialmen, or suppliers."

ANSWER:    As phrased, OPI denies the allegations in this paragraph.

37.    Despite the representations in the lien waivers, OPI did, in fact, know of "suppliers of labor, equipment, materials, superintendence, or any other service or commodity" who were owed money on the Project and/or that there were outstanding "claims, demands, fines, or unsettled disputes" between OPI and "its subcontractors, materialmen, or suppliers" on the Project.

ANSWER:    OPI denies the allegations in this paragraph.

38.    Additionally, for each payment made by Zayo to OPI, OPI provided documents called "Requests for Payment."

ANSWER:    Zayo fails to append the referred to document(s), and therefore, OPI denies the allegations in this paragraph.

39.    In the requests for payment, OPI swore under oath that it had paid all amounts previously paid by OPI to its suppliers and subcontractors.

ANSWER:    This allegation is vague and ambiguous. To the extent OPI understands this allegation, it is denied.

40.    In the Sixth Request for Payment for the Project, OPI swore under oath that the total remaining amount due and owing for OPI's work on the Project was $0.00 and that, as of the date of the requests for payment, OPI was 100% complete with Phase Two of the Project.

ANSWER:    Zayo fails to append the referred to document(s), and therefore, OPI denies the allegations in this paragraph.

41.    Despite the representations made in the requests for payment, and more specifically, the Sixth Request for Payment, OPI did not pay all sums due to its suppliers and subcontractors and OPI was not 100% complete with Phase Two of the Project as seen by the significant amount of mechanic's liens placed on the property by OPI's suppliers and subcontractors after that date.

ANSWER:    OPI denies the allegations in this paragraph.

42.    The representations made by OPI in the lien waivers and requests for payment were made in order to induce Zayo to make payments to OPI.

ANSWER:    OPI denies the allegations in this paragraph.

43.    The representations made by OPI in the lien waivers and requests for payment were false.

ANSWER:    OPI denies the allegations in this paragraph.

44.    Zayo reasonably relied upon the misrepresentations made by OPI in the lien waivers and requests for payment.

ANSWER:    OPI denies the allegations in this paragraph.

45.    Zayo relied, to its detriment, on the misrepresentations made by OPI in the lien waivers and requests for payment, and has been damaged by those fraudulent representations.

ANSWER:     OPI denies the allegations in this paragraph.

WHEREFORE, Defendant, Ocean Pacific Interiors, Inc., respectfully requests that the Court enter judgment in its favor, and against Plaintiff, and award all other just and proper relief, including fees and costs.

## COUNT II
## Breach of Contract-Failure to Defend/Indemnify

46.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 46.

ANSWER:     OPI repeats and reasserts its answers to the allegations contained in paragraphs 1 through 33 as its answer to paragraph 46 as if fully set forth and incorporated herein.

47.     Despite the representations in the lien waivers to the contrary, to date, OPI failed to defend and indemnify Zayo from the claims made by some of its suppliers and subcontractors on the Project.

ANSWER:     OPI admits that it has not it has not defended and/or indemnified Zayo against the mechanic lien claims because it is not obligated to do so, and further denies all remaining allegations in this paragraph.

48.     Zayo has fully performed under its contractual obligations with OPI.

ANSWER:     OPI denies the allegations in this paragraph.

49.     Due to the breach of the agreement in the lien waivers, Zayo has been damaged in that it incurred attorneys' fees and costs defending against the lien claims of OPI's suppliers and subcontractors.

ANSWER:     OPI denies the allegations and conclusions of law in this paragraph.

50.     Although Zayo's claims against OPI related to three of OPI's subcontractors or suppliers have been settled (Talaga Sheet Metal, Columbia Pipe, Parkside Insulation), Zayo still incurred fees and costs unnecessarily defending against the claims of the other claimaints on the Project.

<u>ANSWER:</u>     OPI admits that the claims against the named parties have settled. OPI denies all remaining allegations in this paragraph.

WHEREFORE, Defendant, Ocean Pacific Interiors, Inc., respectfully requests that the Court enter judgment in its favor, and against Plaintiff, and award all other just and proper relief, including fees and costs.

<u>COUNT III</u>
<u>Breach of Contract-Chiller Repairs</u>

51.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 51.

<u>ANSWER:</u>     OPI repeats and reasserts its answers to the allegations contained in paragraphs 1 through 33 as its answer to paragraph 51 as if fully set forth and incorporated herein.

52.     As identified above, as part of the Phase 2-A Agreement, OPI agreed to fund the repair of the Arctic Cool chiller system if OPI's insurer denied the claim regarding the chillers.

<u>ANSWER:</u>     As phrased, OPI denies the allegations in this paragraph. Further answering, OPI states that any agreement fund the chillers was based upon the good faith of Zayo, which was lacking, and the lack of tortious conduct, and therefore, OPI denies that any such applicable agreement is not enforceable.

53.     OPI's insurer denied the claim regarding the chillers.

ANSWER:   OPI admits that its insurer has initially denied the claim made by Zayo under OPI's policy, and further states that said denial is not final and it is currently subject to required arbitration proceedings.

54.   Zayo's insurer also denied the claim regarding the chillers.

ANSWER:   OPI lacks information sufficient to admit or deny the allegations in this paragraph, and therefore, denies the same.

55.   Despite the promise to do so, OPI has refused and failed to reimburse Zayo for out of pocket costs spent to repair the Arctic Cool chiller system.

ANSWER:   OPI admits that it has not "reimbursed" Zayo for costs related to the of the chillers because it is not obligated to due to Zayo's lack of good faith and fair dealing, and its tortious conduct, and/or because said obligation, if any, is not yet ripe.

56.   Zayo has fully performed under the Phase 2-A Agreement.

ANSWER:   OPI denies the allegations in this paragraph.

57.   The failure to reimburse Zayo for its out of pocket costs spent to repair the Arctic Cool chiller system is a breach of the Phase 2-A Agreement by OPI.

ANSWER:   OPI denies the allegations in this paragraph.

58.   Zayo has been damaged by OPI's failure to reimburse Zayo.

ANSWER:   OPI denies the allegations in this paragraph, and specifically denies that OPI caused any of it damages.

59.   On February 23, 2016, Zayo demanded that OPI reimburse it for out of pocket costs spent to repair the Arctic Cool chiller system, but to date, OPI has not responded to the demand or

reimbursed Zayo for its out of pocket costs. A true and accurate copy of the February 23, 2016 demand is attached hereto as Exhibit "7."

ANSWER:     OPI admits that Zayo made a demand for reimbursement, but OPI denies any liability or obligation to so reimburse Zayo.

WHEREFORE, Defendant, Ocean Pacific Interiors, Inc., respectfully requests that the Court enter judgment in its favor, and against Plaintiff, and award all other just and proper relief, including fees and costs.

### COUNT IV
### Breach of Contract-Daily Damages for Failing to Complete Project

60.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 60.

ANSWER:     OPI repeats and reasserts its answers to the allegations contained in paragraphs 1 through 33 as its answer to paragraph 60 as if fully set forth and incorporated herein.

61.     In accordance with the Phase 2-A Agreement (and its amendment), OPI agreed to finalize Phase 2-A of the Project by August 17, 2015. (Exhibits 5 and 6).

ANSWER:     As phrased, OPI denies the allegations in this paragraph.

62.     Despite the agreement to finish Phase 2-A of the Project by August 17, 2015 in accordance with the Phase 2-A Agreement (and its amendments), OPI did not finish its work until April of 2016 at the earliest.

ANSWER:     OPI denies the allegations in this paragraph.

63.     In accordance with the Phase 2-A Agreement, Zayo is entitled to liquidated damages from OPI of one percent (1%) per day, up to one thousand dollars ($1,000) per day, for each calendar day of delay after August 17, 2015. (Exhibits 5 and 6).

ANSWER:     OPI denies the allegations in this paragraph.

64.     Zayo has fully performed under the Phase 2-A Agreement.

ANSWER:     OPI denies the allegations in this paragraph.

65.     The failure of OPI to finish Phase 2-A of the Project is a breach of the Phase 2-A Agreement by OPI.

ANSWER:     OPI denies the allegations in this paragraph.

66.     Zayo has been damaged by OPI's breaches of the Phase 2-A Agreement,

ANSWER:     OPI denies the allegations in this paragraph.

67.     On February 19, 2016, Zayo demanded that OPI pay the liquidated damages due to OPI's failure to complete Phase 2-A of the Project in a timely manner, but to date, OPI has not responded to the demand or paid Zayo the liquidated damage amount. A true and accurate copy of the February 19, 2016 demand is attached hereto as Exhibit "8."

ANSWER:     OPI admits that Zayo made the alleged demand, but denies any liability or obligation to pay liquated damages, and denies all remaining allegations in this paragraph.

WHEREFORE, Defendant, Ocean Pacific Interiors, Inc., respectfully requests that the Court enter judgment in its favor, and against Plaintiff, and award all other just and proper relief, including fees and costs.

## COUNT V
## Breach of Contract-Other Damages on the Project

68.     Zayo restates and incorporates each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein as Paragraph 68.

ANSWER:     OPI repeats and reasserts its answers to the allegations contained in paragraphs 1 through 33 as its answer to paragraph 68 as if fully set forth and incorporated herein.

69.     The MSA provided, in part, in Section 6 that:

**Warranty of Services**: [OPI] warrants that the Services performed under this Agreement conform to the Agreement requirements and are free from defects in design or workmanship performed by the [OPI] or any of its subcontractors (the "Services Warranty"). This Services Warranty shall remain in effect for twelve (12) months from the date Services are completed.

[OPI] shall remedy at its expense any such defect or failure to conform and is responsible for any damages to persons and property resulting from such defects or failure to conform. The Contractor shall also restore any Services damaged in fulfilling the terms of this Services Warranty.

(Exhibit I).

ANSWER:     OPI admits that the quoted language appears in the MSA, but denies that the MSA is applicable to this project, and denies its application to Zayo's allegations, and further denies any liability pursuant to the MSA. Further answering, OPI denies all remaining obligations in this paragraph.

70.     On June 19, 2014, during construction on the Project, OPI failed to wait the statutorily required period of time after calling the Illinois State One-Call System, before commencing their work to request a locate extension and to have all utility companies mark their lines on the property.

ANSWER:     OPI denies the allegations in this paragraph.

71.     When OPI called the Illinois State One-Call System, OPI was required to cease all digging activities on the property to allow all utility companies to mark their lines.

ANSWER:     OPI denies the allegations in this paragraph.

72.     OPI violated the Illinois State One-Call System when it continued to excavate on June 21, 2014 and hit and damaged Commonwealth Edison's service line in the tolerance

zone/easement with power equipment, ultimately knocking out power to the facility where the Project was located.

ANSWER:    OPI denies the allegations in this paragraph.

73.    OPI's actions have damaged Zayo in that Commonwealth Edison has billed Zayo for the aforementioned damage to its service line.

ANSWER:    OPI denies the allegations in this paragraph.

74.    OPI's failure to reimburse Zayo for the amount billed by Commonwealth Edison is a breach of the MSA, and more specifically, the warranty provision in Section 6.

ANSWER:    OPI denies the allegations in this paragraph.

WHEREFORE, Defendant, Ocean Pacific Interiors, Inc., respectfully requests that the Court enter judgment in its favor, and against Plaintiff, and award all other just and proper relief, including fees and costs.

## AFFIRMATIVE DEFENSES

Defendant, Ocean Pacific Interiors, Inc., by its attorneys, Lewis, Brisbois, Bisgaard & Smith, pursuant to Rule 8 of the Federal Rules of Civil Procedure asserts the following affirmative defenses to Plaintiff, Zayo Group, LLC's Amended Complaint for Fraudulent Inducement and Breach of Contract:

1.    Zayo's claims, if any, are barred because they fail to state a claim upon which relief may be granted.

2.    Zayo's claims, if any, are barred by its failure to fulfill conditions precedent to contract enforcement.

3.    Zayo's claims, if any, are barred by its failure to conduct itself in a manner as required under and in all contracts, that is, in good faith and with fair dealing.

4.      Zayo's claims, if any, are barred by its failure to give timely and reasonable notice for its liquidated damages claim.

5.      Zayo's claims, if any, are barred to the extent it failed to mitigate its damages.

6.      Zayo's claims, if any, that are based on written agreements, instruments and other documents fail for want of consideration and are unenforceable.

7.      Zayo waived its claims, if any, for indemnification because it failed to demand, or timely demand, indemnification or tender its defense during the course of the litigation of the claims against Zayo.

8.      Zayo's claims, if any, as they relate to the chiller repairs and cost thereof are premature as there has not yet been a final denial of said insurance claim.

9.      Zayo's claims, if any, are barred by the equitable doctrine of unclean hands.

10.     Zayo's claims, if any, are barred in their entirety by the provisions of the Construction Management Services Agreement.

11.     If applicable, Zayo obtained the Master Services Agreement (previously defined as "MSA") and the Amended Project Services Agreement, referred to herein as the Phase 2-A Agreement, including its amendments thereto, by fraud in the inducement, duress, and/or other tortious conduct, and therefore said agreements are not enforceable, void and/or voidable.

12.     Specifically, Zayo obtained the Phase 2-A Agreement by misrepresentation and fraud in the inducement and execution of the document such that the agreement is not enforceable or, to the extent the agreement may still be enforced, it must be enforced subject to the Construction Management Services Agreement ("CMSA") instead of the MSA.

13.     The Phase 2-A Agreement is voidable and can be rescinded by OPI due to a mutual mistake in its failure to incorporate the correct applicable contract, the CMSA.

14. To the extent the Phase 2-A Agreement is enforceable, the Agreement is now terminated such that by its terms, no further liability or obligations arise under it.

15. Zayo's claims in reliance on OPI's "Requests for Payment" fail based on Zayo's failure to append such documents to the complaint or allege them in sufficient detail.

16. Zayo has waived its claims, if any, based on the theory of fraudulent inducement by failing to object and disavow the agreements between the parties upon learning of the alleged fraud and, instead, by continuing to act pursuant to them.

17. If enforceable, Zayo agreed to a forum other than the present venue for disputes arising out of the Partial Release of Lien Rights and Related Matters Agreement such that transfer to the selected forum is appropriate.

18. If enforceable, Zayo agreed to the application of New York law to resolve disputes arising out of the Partial Release of Lien Rights and Related Matters Agreement such that if the case is not transferred, the Court should apply New York law to these counts.

19. OPI reserves the right to raise additional affirmative defenses as its investigation and discovery continue.

WHEREFORE, Defendant, Ocean Pacific Interiors, Inc., by its attorneys, Lewis, Brisbois, Bisgaard & Smith, respectfully requests that the Court enter judgment in its favor and against Plaintiff's Amended Complaint for Fraudulent Inducement and Breach of Contract, including fees and costs, and award all other just and proper relief in the premises.

<u>COUNTERCLAIMS FOR QUANTUM MERUIT AND BREACH OF CONTRACT</u>

Counter-Plaintiff, Ocean Pacific Interiors, Inc. ("OPI"), by its attorneys, Lewis, Brisbois, Bisgaard & Smith, for its Counterclaim for Quantum Meruit and Breach of Contract against Counter-Defendant, Zayo Group, LLC ("Zayo"), states as follows:

<u>PARTIES</u>

1.      OPI is a New York corporation with its principal place of business located in New York.

2.      Zayo is a Delaware limited liability company with its principal place of business in Colorado.

<u>FACTUAL ALLEGATIONS COMMON TO BOTH COUNTERCLAIMS</u>

3.      Beginning in or about December 2014 and continuing to the date of its execution, Zayo and OPI negotiated the first Amended Project Service Agreement (previously defined as "Phase 2-A Agreement").

4.      The Phase 2-A Agreement was intended by the parties to govern the completion of OPI's work at the Project consistent with the applicable existing agreements between the parties for that work.

5.      OPI's work on the Project was governed by the Construction Management Services Agreement ("CMSA"), which took effect November 1, 2011. (See <u>Construction Management Services Agreement</u>, attached as Exhibit "A.")

6.      The CMSA governed OPI's work on Phase 2 of the Project as described by the "Exhibit A" scope of work document designated by Zayo in its Amended Complaint as Exhibit 2.

7.      OPI had a reasonable belief and justifiable expectation that its continued work on Phase 2-A as set forth by the Phase 2-A Agreement would also be subject to the CMSA.

8.      OPI had a reasonable belief and justifiable expectation that the Master Services Agreement (previously defined as "MSA") governed future, smaller-scale construction between the parties, not ongoing, large-scale construction such as the Project.

9. During the creation of the Phase 2-A Agreement, in a December 30, 2014, revision and continuing thereafter, corporate counsel for Zayo represented that the references to the Master Services Agreement in the Phase 2-A Agreement were "in error."

10. Throughout the duration of Phase 2 of the Project, Zayo made promises to OPI that completion of Phase 2 would lead to work by OPI in Phase 3.

11. Further, by the actions of Zayo, including but not limited to delays in applying and receiving required permits and failure to timely review, approve and deal with contractor requests and requirements, the completion of Phase 2 was delayed multiple times.

12. Due to Zayo's numerous and vexatious delays and unreasonable withholding of approval for completion of work on Project, OPI's delivery of its work and the work of its subcontractors was delayed without fault by OPI.

13. Due to Zayo's unreasonable, and bad faith delays at the Project, OPI incurred in excess of $1.6 million in additional costs, fees, contractor costs, administrative fees, insurance premiums, etc.

14. Due to Zayo's unreasonable, and bad faith delays at the Project, OPI sustained damages in excess of $1.6 million dollars on the Project, causing OPI to exceed in costs the bid upon price, including change orders, on the Project resulting in significant loss of revenue and profit to OPI.

<u>COUNT I</u>
<u>Quantum Meruit</u>

15. OPI restates and realleges the factual allegations of Paragraphs 1 through Paragraph 9 of its Counterclaim as though fully set forth here as Paragraph 10.

16. OPI provided construction management services to Zayo as the construction manager at the Project pursuant to the CMSA.

17. Zayo received the benefit of those services, which included the action items identified in the punch list of the Phase 2-A Agreement. (See Phase 2-A Agreement, designated by Plaintiff in support of its Complaint as Exhibit "5.")

18. This benefit included supervision, coordination, labor, materials, and other construction management services over nearly two years of construction.

19. Should the Court find that the Phase 2-A Agreement is not enforceable based on the affirmative defenses asserted herein or any other bases, OPI is still entitled to receive the value of the construction management services it provided.

20. Zayo accepted these construction management services and received their benefit, in particular, in the continuing operations of the colocation center on the Property.

21. Zayo's retention of the construction management services is unjust because the company has received and accepted, but not paid for OPI's services.

22. Zayo's retention of the construction management services that OPI provided to the Project violates the equitable principles of fair play, honest dealing, and also more bedrock notions of justice and equity by accepting services without providing payment.

23. OPI provided unpaid value to the Project totaling nearly $300,000 and is entitled to receive payment of the unpaid value.

24. Further, and additionally, due to the vexatious and unreasonable delays of Zayo, OPI expended in excess of $1.6 million in additional costs, wages, and fees in order to complete Phase 2 of the Project, which inurred to the benefit of Zayo, as it retained the benefit of the additional expenditures having been incurred and made by OPI.

25.     Accordingly, OPI is entitled to receive payment of the additional expenditures it made for the benefit of Zayo, including but not limited to all unpaid value that Zayo received, which his in excess of $1.6 million dollars in damages and additional funds in attorney fees and costs.

WHEREFORE, Counter-Plaintiff, Ocean Pacific Interiors, Inc., by its attorneys, Lewis, Brisbois, Bisgaard & Smith, respectfully requests that the Court enter judgment in its favor and against Counter-Defendant, Zayo Group, LLC, including applicable interest, attorneys' fees and costs, and award all other just and proper relief in the premises.

## COUNT II
### Breach of Contract

26.     OPI restates and realleges the factual allegations of Paragraphs 1 through Paragraph 9 of its Counterclaim as though fully set forth here as Paragraph 19.

27.     Pleading in the alternative, Zayo and OPI entered into the Phase 2-A Agreement by which OPI performed additional work on the Project.  (See Phase 2-A Agreement, designated by Plaintiff in support of its Complaint as Exhibit "5.")

28.     OPI performed the punch list items and other tasks pursuant to the Phase 2-A Agreement.

29.     OPI has fully performed the work and punch list items set forth by the Phase 2-A Agreement.

30.     OPI is due $253,351.49 under the Phase 2-A Agreement and has demanded this sum from Zayo.

31.     Zayo has refused to pay and, consequently, breached the Phase 2-A Agreement.

32.     Further, Zayo has breached the Phase 2-A Agreement by its failure to meet its obligations and respect the limitations of its rights as set forth by the governing CMSA.

33.     Additionally, Zayo breached the Phase 2-A Agreement by continuously and without good cause delaying approval and items for completion of the Project.

34.     OPI has been damaged by the breach of the Phase 2-A Agreement in the amount of $253,351.49 plus applicable interest, attorney's fees, and costs.

35.     OPI has further been damaged in excess of $1.6 million dollars, plus applicable interest, attorneys' fees and costs, by Zayo's constant, unreasonable, and vexatious delays in approving, allowing, and interfering with OPI's completion of the work contemplated under Phase 2-A Agreement.

36.     Zayo's constant, unreasonable and vexatious delays at the Project, and hence, breach of contract in failing to perform conditions precedent and to exercise good faith and fair dealing as a party to any later adjudicated applicable contract caused OPI damages in non-payment of $253,351.49 and further in excess of $1.6 million dollars, plus applicable interest, attorneys' fees and costs.

WHEREFORE, Counter-Plaintiff, Ocean Pacific Interiors, Inc., by its attorneys, Lewis, Brisbois, Bisgaard & Smith, respectfully requests that the Court enter judgment in its favor and against Counter-Defendant, Zayo Group, LLC, including interest, applicable attorneys' fees and costs, and award all other just and proper relief in the premises.

Respectfully submitted,

By:  /s/ Denean K. Sturino

Denean K. Sturino, #6231325
Lauren L. Bever, #6323636
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Denean.Sturino@lewisbrisbois.com
P: 312.345.1718
F: 312.345.1778

## <u>CERTIFICATE OF SERVICE</u>

I, Denean K. Sturino, an attorney, hereby certify that on February 5, 2018, I electronically filed a true and compete copy of **Defendant and Counter-Plaintiff Ocean Pacific Interior, Inc.'s Answer and Affirmative Defenses to Plaintiff's Amended Complaint and Counterclaim for Quantum Meruit and Breach of Contract** with the Clerk of Court using the CM/EF system, which will send notification of such filing to the following attorneys of record:

Adam C. Toosley
David J. Doyle
Martin D. Syvertsen
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Emails: atoosley@freeborn.com
      ddoyle@freeborn.com
      msyvertsen@freeborn.com
Attorney for Plaintiff

By: /s/ Denean K. Sturino